[Sac. No. 2132. Department One.—April 29, 1915.]

JOHN FAIRBAIRN, by J. T. Fairbairn, his Guardian Ad Litem, Respondent, v. AMERICAN RIVER ELECTRIC COMPANY, Appellant.

NEGLIGENCE—ELECTRIC POWER COMPANY—MAINTAINING WIRES ALONG ROAD—DEGREE OF CARE REQUIRED.—A person or company maintaining an electric power transmission line along, or over a public or private road, while not an insurer of the safety of the public, is required to exercise a high degree of care in placing the wires so as not to interfere with traffic on the ordinary highway and so as to avoid contact with and injury to any person or object which may reasonably be expected to pass under the wires.

ID.—REASONABLE CARE—USE OF ALL KNOWN MEANS TO AVOID INJURY.—The standard to be attained is that of ordinary and reasonable care, and this means such care as a reasonably careful and prudent person, having in view the dangers to be avoided and the likelihood of injury therefrom would exercise, under the circumstances, in order to prevent injury. Where death may be caused by an agency lawfully in use, ordinary care requires that every means known, or that with reasonable inquiry would be known, must be used to prevent it.

ID.—HEIGHT OF WIRES ABOVE GROUND—ASCERTAINING HEIGHT OF OBJECTS PASSING UNDER WIRES—HEIGHT OF EXISTING WIRES.—The duty of the person maintaining such a power line, with respect to the height of the wire, where the line ran along or over a roadway, was to suspend them high enough to permit safe and unobstructed passage under them of all persons and things which could reasonably be expected to pass. In determining this question it was required to make careful inquiry into the conditions and customs of the country penetrated by its lines and ascertain the height of objects which it could reasonably be expected might be transported into, along or across the road over which its lines ran. The height of existing wires throughout the country where the conditions were similar to the territory penetrated by its line were proper for its consideration.

ID.—NOT NEGLIGENCE TO SUSPEND WIRES AT ALTITUDE OF TWENTY-SEVEN FEET, EIGHT INCHES.—A power company cannot be charged with any lack of care or caution, as to persons or objects passing along, into or across the road along or over which its line ran, in fixing the altitude of its wires at a height of twenty-seven feet and eight inches above the ground, when the evidence shows that, both in the neighborhood of its line and elsewhere throughout the state, the country is webbed with telephone wires passing over the highways at heights varying from twenty to twenty-five feet, and that a large number of other power companies, some seventeen or more, were maintaining power lines in the state, several of them in the neighborhood of its line, and that the usual height of the wires of such companies above the ground was practically the same as its own, many of them being lower.

ID.—ANTICIPATION OF PASSAGE OF OBJECTS OF GREATER HEIGHT.—The power company which had erected its transmission line at such an elevation cannot be charged with negligence in not anticipating or foreseeing that at a future date persons might want to transport along the road certain kinds of farming implements extending to a higher elevation above the surface of the ground.

APPEAL from a judgment of the Superior Court of Sacramento County and from an order refusing a new trial. C. N. Post, Judge.

The facts are stated in the opinion of the court.

L. A. Redman, Chickering & Gregory, and Devlin & Devlin, for Appellant.

Stanley Moore, and Gibson & Woolner, for Respondent.

SHAW, J.—The plaintiff recovered judgment for damages in an action for bodily injuries alleged to have been caused by the negligence of the defendant. The appeals are from the judgment and from an order denying a new trial.

The alleged negligence of the defendant was the maintaining of a power line carrying a heavy current of electricity along a public road with the wires too close to the surface of the ground, and without covering the wires with insulating material, in consequence whereof the boom of a hay derrick which the plaintiffs and others were passing under said wires to enter said road from a lane leading into it, came into close proximity to the wires and electricity therefrom passed down the boom cable into the body of the plaintiff, causing the injuries complained of.

The defendant answered, denying the alleged negligence and alleging that the injuries were caused by the plaintiff's negligence.

We are of the opinion that the plaintiff failed to prove the alleged negligence of the defendant.

No evidence was offered to show that the power wires should or could have been insulated by a covering for that purpose. The only evidence on the subject of insulation was given in behalf of the defendant, to the effect that wires carrying over twenty thousand volts of electricity could not be successfully insulated by any known covering, that if the wire carried more than ten thousand volts it was preferable to use bare wires and that such was the invariable custom of electrical power companies. The defendant's line consisted of three wires carrying at the time of the accident forty-four thousand volts in all. This, according to the evidence, was the equivalent of a little over twenty-five thousand volts to each wire

Owing to the highly destructive power of electricity when carried in quantities sufficient for power purposes, and to the fact that it is not visible to the eye or apparent to the other senses, a person or company maintaining an electric power transmission line along, or over a public or private road, is required to exercise a high degree of care in placing

the wires so as not to interfere with traffic on the ordinary highway and so as to avoid contact with and injury to any person or object which may reasonably be expected to pass under the wires. (*Giraudi* v. *Electric I. Co.*, 107 Cal. 124, [48 Am. St. Rep. 114, 28 L. R. A. 596, 40 Pac. 108]; *Perham* v. *Portland E. Co.*, 33 Or. 478, [72 Am. St. Rep. 730, 40 L. R. A. 799, 53 Pac. 14, 24]; *Fitzgerald* v. *Edison etc. Co.*, 200 Pa. St. 543, [86 Am. St. Rep. 732, 50 Atl. 161]; Crosswell on Electricity, sec. 234.) "The companies are not insurers of the safety of the public against all dangers arising from the lawful placing in the street of appliances pertaining to the business carried on by them, but they are bound to know the danger which may naturally be caused by such use of the streets, and to guard against them by the exercise of all the foresight and caution which can be reasonably expected of prudent men under the circumstances." (1 Joyce on Electricity, sec. 438; *Denver* v. *Sherret*, 88 Fed. 233, 31 C. C. A. 499].) "The degree of care required of such companies, under the rule that they must exercise reasonable care, varies according to the facts and circumstances of the case, having in view the serious results which may ensue as a consequence of negligence." (1 Joyce on Electricity, sec. 438a.) The standard to be attained is that of ordinary and reasonable care, and this means such care as a reasonably careful and prudent person, having in view the dangers to be avoided and the likelihood of injury therefrom, would exercise, under the circumstances, in order to prevent injury. Where death may be caused by an agency lawfully in use, ordinary care requires that every means known, or that with reasonable inquiry would be known, must be used to prevent it.

There is some evidence to the effect that it is not a proper construction of such a power line to place the supporting poles two hundred and sixty-four feet apart, and that aluminum wire is not as suitable for the purpose as copper wire. The span between the poles at the place of the accident was two hundred and sixty-four feet and the wire was of aluminum. But the accident was not caused directly or indirectly by the length of the span, and there is no evidence that electricity escapes more readily from aluminum than from copper. Neither the length of the span, nor the kind of metal composing the wires, had any causal relation to the accident. The wires were in plain sight, the plaintiff and those with him

at the time saw them, guessed at their height above ground, and were endeavoring to bring the top of the derrick boom under the wires without coming in contact with them. The sole cause of the accident according to the undisputed evidence, was the fact that the derrick boom, with the cable attached and connected therewith, came in contact with, or in close proximity to the wires. The lowest wire at that point was only 27 feet 8¾ inches above the surface of the ground, the derrick boom in place as it was when the accident happened, being but 2¾ inches lower. The defendant cannot be charged with negligence, therefore, unless, under the circumstances, the placing or maintaining of its wires at that height was negligence.

The defendant's power line was completed in 1906. It carried electricity from its water power plant in the mountains, eight miles from Placerville to Stockton and other places in the San Joaquin County for distribution to public use. As above stated, the duty of the defendant, with respect to the height of the wires, where the line ran along or over a roadway, was to suspend them high enough to permit safe and unobstructed passage under them of all persons and things which could reasonably be expected to pass. In determining this question it was required to make careful inquiry into the conditions and customs of the country penetrated by its lines and ascertain the height of objects which it could reasonably be expected might be transported into, along or across the road over which its lines ran. The height of existing wires throughout the country where the conditions were similar to the territory penetrated by its line were proper for its consideration.

The evidence shows that, both in the neighborhood of this power line and elsewhere throughout California, the country is webbed with telephone wires passing over the highways at heights varying from twenty to twenty-five feet. It was shown that a large number of other power companies, some seventeen or more, were maintaining power lines in California, several of them in the neighborhood of this line, and that the usual height of the wires of such companies above the ground was practically the same as those of the defendant, many of them being lower. On the Folsom road, one mile north of the Jackson road on which the accident occurred, a power line had been maintained for some years with wires

lower than those of the defendant. In some instances wires were placed higher for special reasons, as to carry them above interfering lines, but there is no evidence that it was ever considered necessary to go above twenty-seven feet and eight inches to accommodate traffic below. It is apparent from all these facts that the defendant had no reasonable cause to apprehend that the objects passing along, into, or across this road would be high enough to come into dangerous proximity to its wires placed at the height of twenty-seven feet and eight inches above the ground. No such object could get into many of the roads without difficulty, for the telephone wires, which were much lower than the defendant's wires, would prevent. We cannot perceive any lack of caution by defendant in fixing the altitude of its wires.

The boom of the derrick which the plaintiff was endeavoring to pass under the power wires extended thirty feet and four inches above the ground. It is contended by the plaintiff that in the country through which this power line extended there were many of these hay derricks which the owners might at any time have occasion to transport along or across the roads, and that the defendant should have ascertained this fact and have placed its wires high enough to avoid all dangerous proximity thereto. The evidence, however, does not support this contention. The accident happened in June, 1910. The owner of the derrick testified that he had lived on the land from which it was being taken ever since the year 1889, and that he had never known of any vehicle more than twenty feet high passing along the road in question and that this derrick was the only one of the kind he had ever seen in Sacramento County. It was brought on to his farm in pieces and put up after arrival and it had never been taken on or across any road. The manufacturer of these derricks testified that until 1909, some three years after the construction of defendant's line, he had never sold a derrick of that description in Sacramento County and that he had, up to the date of the trial, sold but two such derricks for use in that county; that they had now gone out of use because the boom could not be lowered, and a different derrick was manufactured having what is called a "drop boom" which may be easily lowered. Home-made derricks were in use, but it is not shown that they were as high as these wires. There is no evidence upon which to predicate the conclusion

that the defendant, by making inquiries at the time it erected its power line, could have ascertained or foreseen that some three or four years later persons would want to transport along the road derricks extending 30 feet above the surface of the ground. The failure to foresee such event cannot be held to establish negligence. On this ground, therefore, we think the verdict is contrary to the evidence.

The defendant also claims that the evidence shows contributory negligence by the plaintiff. It is admitted that plaintiff and those engaged with him knew that electricity from power wires was dangerous to human life and that the wires in question carried electricity to be used for power. The evidence shows that the derrick boom was by the plaintiff allowed to swing around toward the wires with but slight care to prevent it from coming in close proximity to them. The claim, on the plaintiff's behalf, is that he and those with him did not know that electricity from a heavily charged wire would jump or arc across a short intervening space into an adjacent metal conductor, and that they believed there would be no danger unless the boom plate actually touched one of the wires. The evidence as to their knowledge on this point is not very clear. As we have concluded that defendant's alleged negligence was not proven, and as the evidence regarding plaintiff's knowledge may be clearer or different on a new trial, we deem it advisable not to consider the question of contributory negligence. It is also unnecessary to consider the rulings on evidence, and the instructions given and assigned as error.

The judgment and order are reversed.

Sloss, J., and Lawlor, J., concurred.

Hearing in Bank denied.