## CLARA CHOKA v. ST. JOSEPH RAILWAY, LIGHT, HEAT & POWER COMPANY, Appellant.

### Division One, March 7, 1924.

1. **NEGLIGENCE: Uninsulated Electric Wires: Anticipated Use.** An electric company, when it constructs a cross-arm from a pole to a milling company's building, near which is a waterspout, and places uninsulated wires on the cross-arm for its own use, is bound to anticipate that at some time work will have to be done in and around the building and in the neighborhood of the wires and cross-arm attached to the building, and the leaning of a ladder against the cross-arm by a tinner and ascending it to the cross-arm for the purpose of repairing the waterspout must be anticipated; and from such duty to anticipate the presence of workmen on the cross-arm arises the duty on the part of the company to use the highest degree of care to prevent injury to them. And the plaintiff's evidence being to the effect that the tinner, who was in no sense a trespasser, selected the safest place in which to place his ladder and to mount to his work of repairing the spout, and being himself without contributory negligence, the company must

respond in damages for his death, when his hand came in contact with the uninsulated wires.

2. ————: **Long Instruction.** An exceedingly long instruction, but containing as plain a statement of the applicable law as could be found in one of its length, while not to be commended, because of the difficulty any jury must have in carrying its thought to its conclusions, is not reversible error.

Headnote 1: Electricity, 20 C. J. secs. 36, 39. Headnote 2: Trial, 38 Cyc. 1689.

Appeal from Buchanan Circuit Court.—*Hon. L. A. Vories*, Judge.

AFFIRMED.

*Robert A. Brown* and *Richard L. Douglas* for appellant.

(1) Under all the evidence in the case the poles, cross-arms, braces, wires and other appliances pertaining thereto and described in evidence were the sole property of the defendant, and the deceased was without right or authority by invitation, as a licensee or otherwise, to go upon said pole, cross-arms or braces, or among said wires, and in going upon one of defendant's braces and among defendant's wires he was a trespasser, and the defendant owed him no duty other than not to willfully or wantonly injure him, and the demurrers should have been sustained. Featherstone v. Railway Co., 174 Mo. App. 669; Hamilton v. Railroad Co., 250 Mo. 714; Wells v. Lusk, 188 Mo. App. 63; Williams v. St. Joseph, 166 Mo. App. 299; Kelly v. Benas, 217 Mo. 9; Butler v. Railway Co., 155 Mo. App. 287; Henry v. Disbrow Mining Co., 144 Mo. App. 350; Hall v. Railroad, 279 Mo. 553; Ervin v. Railroad, 158 Mo. App. 1; Barney v. Railroad, 126 Mo. 372; Goumans v. Railroad, 143 Mo. App. 75; O'Donnell v. Railroad, 197 Mo. 110; Stamford Oil Mill Co. v. Barnes, 103 Tex. 409; Louisville Home Telephone Co. v. Beeler,

Admx., 125 Ky. 366; City of Greenville v. Pitts, 102 Tex. 1; Sias v. Railway Co., 179 Mass. 343; Hector v. Boston Electric Light Co., 161 Mass. 558; Graves v. Water Power Co., 44 Wash. 675; Hickok v. Auburn L. & P. Co., 200 N. Y. 464; Cumberland Tel. & Tel. Co. v. Meitins, 116 Ky. 554; Allen v. Railroad, 115 Me. 361. (2) The deceased was an experienced tinner and metal worker, having worked at his trade upon public and private buildings in the city for more than twenty-one years. He knew, and of necessity had to know, the danger incident to coming in contact with electric power wires. He saw and knew the purposes for which defendant's poles, braces, cross-arms, wires and other appliances were being used. He knew of the dangers incident to going among said wires and appliances. He did not request that the power be shut off. Knowing these facts, he not only voluntarily and deliberately went upon defendant's brace or cross-arm. and among its wires, and placed himself in such position that it was practically impossible to avoid coming in contact with such wires, but he actually reached out and took hold of or placed his hand or arm upon one of the wires. Under such circumstances he was guilty of the grossest negligence, and the defendant may not be called upon to respond in damages for the inevitable results of such reckless conduct. Hector v. Boston Electric Light Co., 161 Mass. 558; Hickok v. Auburn Light, Heat & P. Co., 200 N. Y. 464; Chartier v. Barie Wool Combing Co., 229 Mass. 153; Allen v. Railroad, 115 Me. 361; Capital Gas & Electric Co. v. Davis, 138 Ky. 628; Junior v. Electric Light Power Co., 127 Mo. 79; Danville Street Car Co. v. Watkins, 97 Va. 713; Druse v. Pacific Power Co., 86 Wash. 519; Frauenthal v. Gaslight Co., 67 Mo. App. 1; Bathe v. Morehouse Stave & Mfg. Co., 199 Mo. App. 127; Edmunson v. Monongahela L. & P. Co., 223 Pa. St. 93; Clark v. Ry. Co., 127 Mo. 197, 213; Weller v. Railroad, 120 Mo. 635; Burge v. Railroad, 244 Mo. 76, 94; Laun v. Railroad, 216 Mo. 563, 578; Brady v. St. Joseph, 167 Mo. App. 423; Woodson v. St. Ry. Co., 224 Mo. 685.

*W. B. Norris* and *Barney E. Reilly* for respondent.

(1) The defendant having maintained a high tension electric wire without proper insulation at a place where mechanics working about the down-spout mentioned in the evidence were likely to come in contact with the wire, was liable for any injury caused by the condition of its wires. There is a distinction between a case where one handles an agency which is of itself dangerous and deadly to human life and a case where the agency in itself is not essentially dangerous and deadly, even as far as licensees or trespassers are concerned. Geisman v. Edison Electric Co., 173 Mo. 654, 674; Ryan v. Transit Co., 190 Mo. 621; Clark v. Railway Co., 234 Mo. 396; Winkelman v. Electric Co., 110 Mo. App. 184; Williams v. Fulton, 177 Mo. App. 177; Williams v. Gas & Electric Co., 274 Mo. 1. (2) The deceased, at the time he received the shock which caused his death, was upon the cross-arm fastened to the Excello Company's building, and to which was attached the defendant's wires, and if, under the terms of his employment, with his master and the Excello Mill Company, he was required to use the cross-arm in loosening the down-spout it then became the duty of the defendant to know that either the employees of the mill company or those who were authorized by the mill company to work in and about the down-spout would be required to come in close proximity to its wires and to use the cross-arm in attending to the duties of their employment, and that from such conditions the duty would arise on the part of the defendant to use every protection which was accessible to insulate its wires at that point and to use the utmost care to keep them so, and for personal injuries resulting therefrom it was liable in damages. Hickman v. Electric Light & Power Co., 226 S. W. 570; Young v. Waters-Pierce Oil Co., 185 Mo. 634; Ratliff v. Mexico Power Co., 203 S. W. 232; Downs v. Telephone Co., 161 Mo. App. 274; Goebel v. Electric Light & Power Co., 188 S. W. 1135; Day v. Light, Power & Ice Co., 136 Mo. App. 274; Hill v. Union Electric Co., 260 Mo. 43; Illingsworth v.

Boston Electric Co., 161 Mass. 583, 25 L. R. A. 552; Wagner v. Brooklyn Heights Co., 74 N. Y. Supp. 809; Sprinkles v. Public Utility Co., 183 S. W. 1072; Von Trebra v. Gaslight Co., 209 Mo. 648. (3) The defendant's liability is not to be determined by the question whether the deceased was a trespasser or not. If the defendant had no reason to expect persons to be where the deceased was at the time he was killed it was not guilty of any negligence toward the deceased, not on the ground that the deceased was a trespasser, but because it breached no duty it owed him. But whenever one person is by circumstances placed in such a position with regard to another that every one of ordinary prudence would recognize that if he did not use ordinary care in his own conduct with regard to these circumstances he might cause injury to the person or property of another, then a duty arises to use ordinary care to avoid such danger. The true doctrine is that a duty of care may by reason of the circumstances be a duty owing from the owner of property to one who is technically a trespasser upon it. Mahaney v. Independence, 183 S. W. 1117; Ennis v. Gray, 34 N. Y. Supp. 379, 382; Newark Electric Light & Power Co. v. Garden, 78 Fed. 74.

GRAVES, J.—Plaintiff, Clara Choka, the widow of William Choka, brings this action for damages for the alleged negligent killing of her said husband, by the defendant. Defendant is a light and power company in the city of St. Joseph, and engaged in furnishing light and electric power to other business corporations, and among them the Excello Feed Milling Company. In the furnishing of electric power to this Milling Company defendant had poles upon which were strung wires which carried a high. voltage of electric current. Near the northwest corner of the Milling Company's main building was situated a pole of the defendant, and this pole was braced by means of a wooden brace from the pole to the building. On this pole were strung these high tension wires. A fair conception of the situation can be gained by defendant's Exhibit No. 1, here reproduced.

Choka v. Railway, Light Heat & Power Co.

This photograph shows a certain water-spout, and William Choka, then doing some repair work, as a tinner, for the Milling Company, was sent to do some work in and about this water-spout. Whilst so engaged he came in contact with the wires of defendant, and was killed. Defective insulation of the wires is the charge in the petition.

The defendant's answer is as follows:

"The defendant for its second amended answer to plaintiff's petition filed in the above cause admits that it is a corporation; that it maintained wires charged with electricity upon the pole and arms thereof described in plaintiff's petition, and that William Choka, while upon said pole, or the arms thereof, fell across defendant's wires, and that when removed therefrom he was dead, but the defendant denies each and every other allegation in said petition contained.

"The defendant further states that the said William Choka carelessly and negligently placed a ladder against one of the cross-arms on the pole described in plaintiff's petition, and that he carelessly and negligently climbed upon said ladder and went upon one of defendant's cross-arms upon said pole and among the wires upon said pole, thereby carelessly, negligently and unnecessarily placing himself in a position where he would be likely to come in contact with said wires; that the said William Choka knew, or in the exercise of ordinary care would have known, that said wires were charged with deadly currents of electricity, and that should he come in contact therewith he would be in danger of sustaining serious and probably fatal injuries; that if the said William Choka did come in contact with one of said wires his own negligence contributed directly to cause his coming in contact therewith and all injuries resulting therefrom.

"The defendant further states that the pole and arms described in evidence were the property of the defendant, and that they were maintained for the purpose of carrying its wires used in the distribution of electric

current; that William Choka was not permitted to be upon said pole or cross-arms, or the wires attached thereto; that in going upon said pole and cross-arms he was a wrong-doer and trespassed upon the rights of the defendant, and that his own negligence and wrongful conduct contributed directly to cause any injuries he may have sustained.

"Wherefore, having fully answered, this defendant asks to be discharged, together with its cost in this behalf expended."

Reply was a general denial. On the issues thus made a trial was had before a jury, which returned a verdict for $10,000, upon which judgment was duly entered. From such judgment defendant has appealed.

Melvin Bowman, who was working on a new building for the Milling Company, just north of this old building, and who was at the time above ground, and about on a level with the cross-arm of this pole, thus describes the accident.

"Q. The day that Mr. Choka received the injuries, when did you first see him? A. I saw him going up the ladder; was about two-thirds of the way up when I first saw him.

"Q. Where was it located. A. Setting in the cross-arms and leaning against the cross-arm on the north side of the cross-arm.

"Q. Was it nearer the pole, or nearer the building? A. Nearer the pole.

"Q. Now, what is the next thing you saw in reference to him? A. I saw him when he was about two-thirds of the way up, until he got to the cross-arm and he had one foot on the cross-arm and one on the ladder. My attention was called to my work, and the next time I saw him I heard him holler and I looked over there and he was falling back.

"Q. Where did he fall? A. Fell backwards, and his left foot caught over one wire and the toe of his left foot under the cross-arm and he hung there under one wire.

"Q. Did you see them take him down? A. Yes, sir.

"Q. Was he dead then? A. I taken him to be dead.

"Q. Did you notice any burn on him any place? A. I saw a place on his right arm.

"Q. Where was that burn located? A. Seemed to be right in here.

"Q. Between— A. Between the elbow and wrist.

"Q. On the inside of the arm? A. Yes, sir.

"Q. What was his appearance—in his face, I mean? A. He looked to me like he was dead.

"Q. Was his face blue, or the natural color, or what? A. I didn't know the man. I couldn't tell.

"Q. Now Mr. Bowman, have you examined that locality there?` A. Yes, sir.

"Q. Suppose a man was going to remove that joint in that pipe, how could he reach that point—if he was going to remove that joint? A. Looked to me like he used the safest method.

"Mr. Brown: That is objected to by the defendant as being the conclusion of the witness.

"The Court: Objection sustained.

"Q. Just tell the facts—how could a mechanic who wanted to get to that joint to remove it, how could he reach it, get to it?

"Mr. Brown: I don't believe that is proper. We object to it. He can state the condition.

"The Court: I think the question is proper. The objection is overruled.

"To which ruling of the court defendant at the time excepted.

"A. I would put the ladder practically in the same position.

"Mr. Brown: We object to what he would have done.

"Q. Just tell how it could be reached—not what you would do—how could it be reached.

"A.   It could be reached by setting the ladder on the north side of the cross-arm, going up the ladder to go over the wires; could be reached that way.

"Q.   How could it be reached any other way?   A. I don't know of any other way.

"Q.   How near did these wires run around the corner where the spout is?.   A.   Come right within four or five inches of it.

"Q.   Could a ladder be placed on either the north or the east side and get to that point without getting on the cross-arm?

"MR. BROWN:   East or west?

"Q.   North and west side?   A.   Not without crawling through the wires.

"Q.   Supposing he crawled through the wires, could anyone—from the construction of that pole and wires— could he get where my finger points at the joint on the north side of the building except by getting on the cross-arm?   A.   He couldn't do it.

"Q.   You notice where those wires turn at the building and go east here?   A.   Yes, sir.

"Q.   Did you notice the condition of the insulation of those wires at that point?   A.   A space in each wire there was no insulation on it for about six inches on all three of those wires.

"Q.   Are they insulated east of that point?   A.   I never examined them there.

"Q.   Can you see from this picture where they are not insulated?   A.   Yes, sir; right there they are, all three of them.

"Q.   How far do you say that is from the corner, where there is no insulation at all?   A.   About eight inches from the corner.

"Q.   Around on the north side of the building?   A. On the north side of the building, yes, sir.

"Q.   How far is that place from the joint of the spout, the place where they are not insulated?   A.   That is about two feet, I guess.

"Q. Did you see Mr. Choka come in contact with any wire? A. No, sir."

I. It will be noticed from the photograph in the statement set out, that there were a number of wires in and about the corner of this building. Deceased was a tinner, and wanted to take down a part of the guttering shown in the picture. On this pole were three **Conditions.** wires, wrapped around the knobs, to which there were dead ends. It is admitted that by ten minutes work these dead ends could have been insulated with rubber and made safe. This comes from an employee of defendant. It is also admitted that, although they were what are called dead ends, yet they were live ends if not insulated. Then there were wires from which the insulation had worn off. There was a sharp contest as to whether or not the deceased placed his ladder in the safest place to do the work which he was called upon to do. Suffice to say that plaintiff had evidence to show that he was an experienced and careful man, and that his ladder was placed in the safest place. From other evidence contrary inferences might be drawn. From one witness (the helper of the deceased) it appears that as he reached over to the gutter with one hand (which would be in the neighborhood of the uninsulated wires) he placed his other hand upon the upper cross-arms of the pole (near where the dead ends were wrapped around the knobs) and smoke immediately appeared in one of the fuse boxes shown in the picture. The burn appeared upon the arm and not on the legs, or upon either of them. Upon the appearance of the smoke the deceased was seen to fall backward and when taken down was dead, or practically so. There were no untoward conditions of the weather. There were these non-insulations as above mentioned. The foregoing are some of the outstanding facts. Others will be noted, if required under the points made.

II. The assignment of errors cover (1) the failure to give certain peremptory instructions, (2) the

giving of instruction one for plaintiff, (3) the admission of incompetent and prejudicial evidence for plaintiff, and (4) admitting certain alleged opinion evidence.

The demurrer to the evidence was in three forms. The first instruction in nature of a demurrer took the usual form. The 2nd and 3rd read:

"2. The court instructs you that the deceased, William Choka, had no right to go upon defendant's pole or cross-arms, or among defendant's wires thereon, in the manner disclosed by the evidence, and you must find your verdict in favor of defendants.

"3. The court instructs you that the law did not require the defendant to anticipate that the deceased, William Choka, or any other person, might climb upon defendant's electric-light pole described in evidence or the cross-arms attached thereto, and that such person might come in contact with defendant's wires, whether insulated or uninsulated, and under such circumstances no duty rested upon the defendant to have its wires so insulated as to prevent injury to anyone who might go upon defendant's pole or the cross-arms attached thereto, under the circumstances described in evidence."

The latter two require some additional details of the facts. The picture in our statement shows the tall pole near the corner of the building. This is the northwest corner of the building. To the north of this building (which was owned by the Excello Feed Milling Company) was being built some addition to another building owned by the same company. Between these buildings was a railway track for the use of this mill. The railway car (standing east and west) is upon the track, and such a car was there at the time of the accident. To the south of the tall pole is a shorter one, and each pole is attached to the building by a cross-arm. The particular structure there was for the purpose of furnishing electric power for the mill. Part of the wires were for the building shown in the picture and part for the building to the north. Permission was obtained from the mill company, by defendant, for the erection and at-

taching of these poles to its building. The purpose, however, was to place the defendant in situation to furnish electric power to the mill company at the very best advantage. Deceased Choka and his helper were employees of a contracting firm, but had been sent over to the mill to do some work for the mill company. Deceased was an experienced tinner. As suggested above it is first contended that he did not select the safest place in which to do the work, but there is evidence both ways (but mostly for plaintiff) upon that question, and the verdict of the jury closes that matter. This verdict leaves the ladder from which plaintiff was about to do his work in the safest place for the purpose. Other question urged go to the right of deceased to be there at all, and his contributory negligence from another angle.

As said this particular pole and wire construction was made and had for the purpose of furnishing electric power (and perhaps light) to the milling company. It was by the consent of the milling company and for the mutual convenience and profit of both. The cross-arm upon which deceased placed his ladder was attached to the mill company building, as was the other cross-arm upon the shorter pole. The wires were placed in and around the mill company's building and upon its property. Defendant, when it placed those poles, cross-arms, and wire constructions, was bound to anticipate that at some time work would have to be done upon and around that building, and in the neighborhood of these wires, poles and cross-arms. The very cross-arm upon which the ladder was placed was attached to the building as well as the pole. Its use by workmen must have been anticipated. [Geisman v. Missouri-Edison Electric Co., 173 Mo. 654; Young v. Waters-Pierce Oil Co., 185 Mo. 634; Hill v. Union E. L. & P. Co., 260 Mo. 43; Von Trebra v. Gas Light Co., 209 Mo. 648; Ratliff v. Mexico Power Co., 203 S. W. 232.]

It is not a situation wherein the doctrine of a trespasser can be invoked, and those cases need not be considered. Deceased had the right to be in and around the

building in the performance of his work, and defendant was obligated to anticipate that workmen at some time would be there. Thus arises the duty upon the part of defendant to use the highest degree of care to prevent injury to anticipated workers having the right to be in and around its wires. The very nature of the situation demonstrates that the defendant should have reasonably anticipated workers, such as deceased, to be there, and as said, the deceased was not upon the pole, but resting his ladder upon the cross-arm, which was common both to the pole and the building upon which he was working.

There is nothing to show that deceased knew of the failure of defendant to properly insulate its wires, or the dead ends thereof. The positive evidence of defendant's witnesses is that high voltage wires could be insulated, so as to insure safety.

The foregoing answers the suggestions contained in defendant's instructions 2 and 3 in the nature of demurrers. All demurrers were properly overruled.

III. The next assignment is lodged against instuction number 1 given for the plaintiff. This instruction is excessively long, and uselessly so, but it is as plain a statement of the law as could be found in an instruction of such useless length. Learned counsel for appellant urge that its very length is confusing, and this I have condemned in two or three dissents. In one the dissent was solely on the ground that the verbosity and length of the instruction was misleading to the jury. Suffice it to say my objections fell as water upon the duck's back, and such kind of instruction was approved, or tacitly approved. I had one concurrence in the person of DAVID E. BLAIR, J. The instruction was much like the one here, except it was longer and more complicated. [Wolfe v. Payne, 294 Mo. l. c. 189.] In this case I said:

"I dissented in Division for the reason that the principal instruction for the plaintiff was of such length that no average jury could carry the thought supposed to be in the instruction. I think that there are substan-

303 Mo. Sup.—10.

tial errors in this instruction, leaving out of consideration its length. However, its length has been sufficiently condemned by this court, and I go no further. I doubt whether or not there is liability, but this I will not discuss, as the length of this instruction condemns the trial *nisi*. [Williams v. Ransom, 234 Mo. 1. c. 66; Stid v. Railroad, 236 Mo. 398; Crowl v. American Linseed Oil Co., 255 Mo. 331; Andrew v. Linebaugh, 260 Mo. 651; Heman v. Hartman, 189 Mo. 20; Sidway v. Live Stock Co., 163 Mo. 376.]

"Think of five printed pages for an instruction in an ordinary damage suit! It shocks the experience of both bench and bar. No jury can carry the real thread of such an instruction, if it can be said that it has a thread. For this reason, if not for others, I dissent."

Five of my brothers, in Wolfe's Case, said such an instruction was all right, and bowing to the majority rule, I must say that the instruction here, so far as length and the things that grow out of its length are concerned, is all right. I sent Wolfe's Case to Banc, and see no reason to send this to that court, in view of the opinion in Wolfe's Case.

There are one or two additional objections to the instruction, but they are without substance. If the length of it did not confuse the jury, the other matters would not mislead or harm them. We are forced to rule the instruction to be well enough, although I am (personally) not wrapped up in such a ruling. The instruction meets the ruling of this court, however, and at that I let it go.

We have examined the objections as to evidence, and find them without substance. The judgment must be affirmed, and it is so ordered. All concur.