[S. F. No. 14493.   In Bank.—January 26, 1932.]

JAMES J. McCORMICK, Appellant, v. GREAT WEST-
ERN POWER COMPANY OF CALIFORNIA (a Cor-
poration), Respondent.

ROBERT TILLIE, Appellant, v. GREAT WESTERN
POWER COMPANY OF CALIFORNIA (a Corpora-
tion), Respondent.

Reisner & Deming for Appellants.

Keyes & Erskine, W. H. Spaulding and Guy C. Earl for Respondents.

THE COURT.—The petition for a hearing in this matter after decision by the District Court of Appeal, First District, Division One, was granted in order that this court might give further consideration to the questions presented

by the granting of the motion for a nonsuit by the trial court. From such consideration and study we are satisfied that the nonsuit was improperly granted, and that the opinion written by Mr. Justice Knight of the District Court of Appeal correctly answers the points raised by the appellants. For that reason it is adopted and made the opinion of this court in the cause, viz.:

"While working on a building in the course of construction in the city of Oakland plaintiffs were severely burned by electricity when a steel bar they were handling came in contact with defendant's power line, strung on poles standing along the side of the street on which the building was being erected; and they brought separate actions for damages against the power company, alleging that their injuries were proximately caused by the negligent manner in which the wires were maintained. The actions were consolidated for trial, and came on for hearing before the court sitting with a jury. At the conclusion of plaintiffs' case the court granted a motion for nonsuit, and thereupon judgments of dismissal were entered, from which plaintiffs have appealed. The points urged as grounds for reversal are that the court erroneously excluded material evidence which plaintiffs sought to introduce in support of one of the essential issues to be determined by the jury; and that even without said evidence the case presented by plaintiffs was legally sufficient to support the inference that defendant was negligent, and that therefore the court erred in granting the motion for a nonsuit.

"The building on which the accident occurred was a five-story structure, reinforced with steel, located on the corner of Thirtieth and Summit streets. The construction thereof had reached the fifth floor level, and the outside wall nearest Summit street, along which the company maintained its power wires, was completed to a height of 24 to 30 inches above the floor level. The poles carrying the wires were set in the sidewalk adjacent to the building, the tops thereof being on a level with the fifth floor, or thereabouts. Crossarms were fastened near the tops of the poles, along which were strung a number of wires. Suspended from the top crossarm on each pole were three wires belonging to defendant, each wire carrying 11,000 volts of electricity. One wire was fastened to the crossarm on the

side of the pole nearest the building, and the other two were attached to said crossarm on the side of the pole nearest the street. Another power wire carrying 4000 volts was fastened to a crossarm lower on the pole, but it belonged to another company; and still lower down on the poles were other wires of low voltage, belonging also to the other company. Defendant's wires were insulated, but admittedly the insulation afforded no protection because it was of a type insufficient to prevent the escape of the electrical current. According to the testimony given by the division superintendent of the power company, who was called as a witness by plaintiffs subject to the provisions of section 2055 of the Code of Civil Procedure, upon learning that the building was to be constructed and about two months prior to the accident, the company caused its wire nearest the building to be moved 27 inches farther over on the crossarm toward the pole, so that at the time of the accident it was 10 feet 4 inches distant from the wall of the building. Continuing, he stated that shortly after the wire was moved he wrote a letter to the general contractor of the building reading as follows: 'We understand you are in charge of construction of a building on the Southwest corner of 30th and Summit Streets, Oakland. Exterior structures, scaffolding, etc., are being placed on or adjacent to this new building, that will possibly interfere with our electric circuits which pass in front of this property. In the interest of safety to all concerned, we beg to warn you of the danger, both to life and property, attendant upon contact with our electric wires through the careless handling of ropes, scaffolding and other structural material. We have also many consumers in the immediate vicinity depending upon us for electric service, and in addition to the risk involved, any contact with our wires may seriously result in interruption of service to these consumers. May we ask that all contractors, subcontractors, and employees be warned of these dangers and especially cautioned against the attendant risk, and that extreme care be exercised to prevent any contact with our wires or equipment.' (Signed) 'F. C. Viscia, Supt. Oakland Division.'

"Plaintiffs were iron workers employed by a subcontractor and went to work on the job for the first time on the morning of the accident. The evidence shows without dis-

pute that they had not been forewarned of the presence of the high-voltage wires, and they testified that they did not know of their presence before they were injured. Earlier in the day they were engaged on the Thirtieth street side of the building, and just before they were injured the foreman put them to work on the fifth floor to install a steel reinforcing bar an inch thick and 35 or 38 feet long in a floor beam. In order to do so it was necessary for them to project one end of the bar over the wall above Summit street, and when it came within 8 or 10 inches of defendant's high-voltage wire nearest the building the electricity arced therefrom to the bar, which brought the wire and the bar together instantly, and the wire was burned in two; one of the loose ends of the wire then swung across the other two high-voltage wires, severing them also. At the time the bar made contact with the power wire one of the men was standing ten feet distant from the wall and the other five and a half feet therefrom, and both were standing on a steel deck leading to and from the construction elevator, built outside of the building between the wall and said power wires. The result was that the full voltage from said wires entered the bodies of plaintiffs, rendering them unconscious and severely burning the flesh on their hands and feet, so that they are permanently injured. ■ Both men testified that the wires were not visible from the fifth floor without going to the edge of the building and looking over. Defendant, in its brief, endeavors to demonstrate by certain mathematical calculations that the wires could be seen from a point some distance back from the wall; but such calculations merely raise a conflict, and in passing on a motion for a nonsuit all conflicts must be resolved in favor of the plaintiff.

■ "The legal duties imposed upon a power company to protect persons from coming in contact with this invisible but deadly current are set forth in *Anderson* v. *Southern California Edison Co.*, 77 Cal. App. 328 [246 Pac. 559, 562], as follows: 'From the very nature of its business an electric company using highly charged wires owes a legal duty toward every person who, in the exercise of a lawful occupation in a place where he has a legal right to be and is liable to come in contact with the wires, to see that such

wires are properly placed with reference to the safety of such persons. It is only in accord with reason and common sense that persons controlling so dangerous and subtle an agency as electricity should use a high degree of care. Either the wires must be insulated or at least placed beyond the danger line of contact with human beings. While the law does not require the wires to be insulated everywhere, where there is reason to apprehend that persons may come in contact with them in the pursuit of their calling or where they may be reasonably expected to go, they should in some manner be protected.' Stated in other words, where it reasonably may be anticipated that persons will come in contact with the deadly wire 'the obligation of the electric company is alternative in its nature. Either the wire must be insulated, or it must be so located as to be, comparatively speaking, harmless.' (Curtis on the Law of Electricity, sec. 511.) Such is the doctrine everywhere (9 R. C. L. 1210; *Giraudi* v. *Electric Imp. Co.*, 107 Cal. 120 [48 Am. St. Rep. 114, 28 L. R. A. 596, 40 Pac. 108]; *Howell* v. *San Joaquin Light & Power Corp.*, 87 Cal. App. 44 [261 Pac. 1107]; *Anstead* v. *Pacific Gas & Elec. Co.*, 203 Cal. 634 [265 Pac. 487]; *Burrows* v. *Livingston-Niagara Power Co.*, 217 App. Div. 206 [216 N. Y. Supp. 516]; Id., 244 N. Y. 548 [155 N. E. 892]; *Rome Ry. & Light Co.* v. *Jones,* 37 Ga. App. 244 [139 S. E. 579]; *Snyder* v. *Leavenworth Light etc. Co.*, 98 Kan. 157 [157 Pac. 442]; *Hickman* v. *Union Electric Light & Power Co.*, (Mo. App.) 226 S. W. 570; *Card* v. *Wenatchee Valley Gas & Elec. Co.*, 77 Wash. 564 [137 Pac. 1047]). 'The standard to be attained is that of ordinary and reasonable care, and this means such care as a reasonably careful and prudent person, having in view the dangers to be avoided and the likelihood of injury therefrom, would exercise, under the circumstances, in order to prevent injury. Where death may be caused by an agency lawfully in use, ordinary care requires that every means known, or that with reasonable inquiry would be known, must be used to prevent it.' (*Fairbairn* v. *American River Elec. Co.*, 170 Cal. 115 [148 Pac. 788, 789], and 179 Cal. 157 [175 Pac. 637].) 'If,' therefore, says the court in *Minter* v. *San Diego Consol. Gas etc. Co.*, 180 Cal. 723 [182 Pac. 749, 750], 'guided by those considerations which ordinarily regulate the conduct of human affairs, an ordinarily

prudent person would have had reasonable ground to suspect that the wires so placed would cause injury, the plaintiff can be said to have proved a breach of duty.' And where the evidence is such that reasonable men might fairly differ as to the answer to the above question, the issue is one of fact for the jury to determine, and if it finds in favor of the plaintiff, its verdict will not be disturbed. (*Minter* v. *San Diego Consol. Gas etc. Co., supra.*) A practical illustration of the application of the foregoing rule is to be found in the case of *Fairbairn* v. *American River Electric Co., supra,* wherein on the first appeal (170 Cal. 115 [148 Pac. 788]) the judgment in favor of plaintiff was reversed upon the ground that there was no evidence to show that the power company could have anticipated or foreseen that at a future date persons in that locality would likely transport along the road over which the company's power wires were strung the character of farming implements plaintiff was moving along the road at the time the implement came in contact with the wires; whereas on the second appeal (179 Cal. 157) the judgment in favor of plaintiff was affirmed because on retrial plaintiff supplied such proof by showing that the character of implements he was then transporting over the highway was in general use in those regions and that consequently the power company had reasonable ground to apprehend the occurrence of such accidents if the wires were allowed to remain in their then present condition.

"Furthermore, it is held in this state that for the purpose of proving that one who maintains a dangerous instrumentality might reasonably anticipate that persons engaged in lawful occupations, in places where they have a legal right to be, are likely to be injured thereby, evidence of previous accidents similar in character to the one in question, and not too remote therefrom in place or point of time, is admissible. (*Long* v. *John Breuner Co.,* 36 Cal. App. 630 [172 Pac. 1132, 1136]; *Gorman* v. *County of Sacramento,* 92 Cal. App. 656 [268 Pac. 1083, 1087]; *Dyas* v. *Southern Pac. Co.,* 140 Cal. 296 [73 Pac. 972].) In the Long case, in holding that evidence of similar accidents was admissible, the court said: 'We think the evidence was admissible upon the general proposition that testimony of previous accidents similar to the one in question not only

tends to show the dangerous character of the place, but, where the previous accidents have occurred under substantially the same general circumstances of the subsequent accident, tends to disclose the cause of the latter, and, furthermore, tends to bring home to the person maintaining the place where the injury occurred knowledge of the dangerous condition of such place.' And in the Gorman case the following language was used: 'Appellant next contends that the court erred in permitting respondent to introduce evidence that other accidents had occurred at this bridge— that is, that at least four automobiles had fallen off of this bridge into the canal prior to the time the boy was drowned. We think the evidence was properly admitted as tending to show the dangerous character of the bridge and the cause of the boy's death, and, furthermore, it tends to bring home to appellant knowledge of the dangerous condition of said bridge.'

"In the present case, as evidence tending to establish that the defendant company had reasonable ground to anticipate that the workmen employed in the construction of this particular building would be in constant danger of electrocution or severe injury because of the presence of said wires in the location and condition in which they were being maintained, plaintiffs sought to prove, in addition to the existing circumstances under which the wires were maintained, that several other men had been burned by defendant's high-voltage wires, under similar circumstances, in the immediate neighborhood, about a year prior to the present accident; but the evidence was excluded. In this regard the record discloses that the company's superintendent, who had held that position during all of the times herein mentioned, was asked by counsel for plaintiff if he was not aware that in the immediate vicinity and prior to the present accident other workmen had been injured by defendant's power lines strung in front of buildings on which they were employed, under circumstances similar to those existing in this case; but on objection by defendant the court refused to allow the witness to answer. And before plaintiffs closed their case they offered specifically to prove that about a year prior to the present accident three workmen employed in the construction of a seven-story building diagonally across the street intersection from the building in

question, and known as the Peralta Hospital building, were severely burned in the same manner as plaintiffs, when a steel bar they were handling likewise came in contact with defendant's power wires suspended from poles set in the sidewalk adjacent to that building, under circumstances similar to those existing here; also that shortly after the latter accident and prior to the present one another workman employed on the Peralta Hospital building was injured in the same manner when an iron bar which he projected out of the building came in contact with one of said power wires; and that the circumstances of these earlier accidents were well known to defendant when the superintendent wrote the letter above quoted to the general contractor. But the court rejected the evidence.

"In view of the law as declared and applied in the cases above cited, it is our opinion that the evidence was admissible for the purpose for which it was offered; and that it was prejudicial error to exclude the same for the reason that if admitted the evidence as a whole would then have been amply sufficient to sustain the inference, if the jury had so found, that the power company had reasonable ground to anticipate that workmen on said building were in danger of being injured by the presence of said wires in the location and condition in which they were being maintained, and that consequently it was negligent in failing to take the necessary steps to insulate the same or to place them beyond the point of danger. (*Howell* v. *San Joaquin Light & Power Co.*, *supra;* *Anstead* v. *Pacific Gas & Elec. Co.*, *supra;* *Giraudi* v. *Electric Imp. Co.*, *supra;* *Heyer* v. *Jersey Central Power & Light Co.*, 106 N. J. L. 211 [147 Atl. 452]; *Burrows* v. *Livingston-Niagara Power Co.*, *supra;* *Rome Ry. & Light Co.* v. *Jones*, *supra;* *Choka* v. *St. Joseph Ry. etc. Co.*, 303 Mo. 132 [260 S. W. 67]; *Stevens* v. *United Gas & Elec. Co.*, 73 N. H. 159 [70 L. R. A. 119, 60 Atl. 848].)

"Among the reasons assigned by the trial court in support of its adverse ruling was that there was no 'necessity for such proof', adding, 'the evidence affirmatively shows . . . that defendant knew of the dangerous situation of the wires, and had sent its warning to the people who were about to put up the building'. But if that be true, under the doctrine of the decisions above cited the defendants were not entitled to a nonsuit; and even conceding that the evidence

sought to be introduced was, as the court intimated, cumulative in its nature, it was not, for that reason, rendered inadmissible.

"Defendant endeavors to escape the effect of the rule of the Long and Gorman cases, *supra,* upon the ground that there the previous accidents occurred at the identical places where plaintiffs therein were later injured; whereas here the previous accidents which plaintiffs sought to prove occurred in another building diagonally across the street from the one in which plaintiffs were injured. But the distinction mentioned does not, in our opinion, take the case out of the operation of the rule there applied, providing the circumstances attending the accident were in other respects the same, and there is no contention made on this appeal that they were different. As said in *Long* v. *John Breuner Co., supra,* in answer to the contention made by the defendant therein, that before previous accidents may be shown it must appear that such accidents occurred under circumstances 'precisely similar' to those characterizing the later or subsequent one, 'We think . . . that the rule is that previous accidents need only be similar in their general character to the one in question to render proof of them admissible.' And, as stated, here there is nothing in the record to challenge the accuracy or good faith of counsel's statement to the effect that they expected to prove that the circumstances attending the previous accidents were substantially the same as those of the present case. Defendant further contends that the early case of *Martinez* v. *Planel,* 36 Cal. 578, declares a rule contrary to the one adhered to in the Long and Gorman cases, *supra;* but if that be true, the later cases have evidently departed from that rule; and, of course, the doctrine of the later decisions must prevail. Among the other cases cited and relied upon by defendant is *Sweatman* v. *Los Angeles Gas & Elec. Corp.,* 101 Cal. App. 318 [281 Pac. 677, 680] ; but it will be seen from an examination thereof that it states no rule in conflict with the views herein expressed. On the contrary, it will be observed therefrom that it recognizes the rule here invoked that a plaintiff in an action such as this may show, within the limitations stated, previous accidents in establishing the element that the power company had reasonable ground to apprehend that persons were likely to be injured by com-

ing in contact with its wires. In that case, however, there was no such evidence introduced, and it was upon that ground that the court absolved the company from liability, saying, 'there is no allegation that any similar injury has ever resulted therefrom and therefore no such injury was reasonably to be anticipated'.

"Plaintiffs sought also to show that subsequent to the time plaintiffs were injured, another workman employed on this same building was injured by said wires; but we think the testimony relating thereto was properly excluded because obviously the happening of the subsequent accident could not have tended to prove that by reason thereof the company might reasonably have anticipated the injury to plaintiffs. . . .

"For the reasons above stated we are unable to sustain the trial court's rulings excluding said evidence and granting a nonsuit."

The judgments of dismissal are reversed.

Rehearing denied.