[No. D012220. Fourth Dist., Div. One. Jan. 22, 1993.]

HECTOR MORFIN et al., Plaintiffs and Appellants, v.
THE STATE OF CALIFORNIA, Defendant and Respondent.

**COUNSEL**

Virginia R. Gilson and Gary A. Sernaker for Plaintiffs and Appellants.

Daniel E. Lungren, Attorney General, Robert L. Mukai, Chief Assistant Attorney General, Marvin Goldsmith, Assistant Attorney General, Luis R. Vargas and Karen M. Walter, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**WIENER, Acting P. J.**—In this personal injury action against the State of California alleging unsafe design of a state building and adjacent parking lot, plaintiffs Hector Morfin, Maria Morfin Cervantes, and their sons, Ricardo and Edwardo Morfin, appeal from a judgment after the trial court in a bifurcated action found that the state had established a design immunity defense. (See Gov. Code, § 830.6.) The Morfins argue they were improperly denied discovery of evidence which could have defeated the state's defense. We agree and reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

The Morfins were seated inside the Department of Motor Vehicles (DMV) office in Chula Vista when Agustin Medina crashed his car into the building. Maria Morfin and her two children were hit by the car as Hector Morfin watched. The Morfins sued the state as the owner and operator of the facility for injuries they suffered in the accident, alleging negligence, loss of consortium, and negligent infliction of emotional distress. They claimed the facility was in a dangerous condition because of the high volume of traffic in the parking lot and the building's lack of protection from the cars. Further, the Morfins claimed the state had notice of this danger before the accident.

The state invoked a design immunity defense under Government Code section 830.6, contending the building's design met building requirements and was reasonably approved by state engineers. Before trial, the State successfully moved to try the design immunity defense separately to the court before presenting the remainder of the case to a jury.

After hearing evidence, the court found the state was immune. It concluded there was no "proof that the special use in this building provided any notice of a dangerous condition or a change in conditions from the time the design was approved up until the time of this accident . . . ." The court was not persuaded by evidence of two prior building collision accidents at the Chula Vista facility because it found the circumstances of those accidents dissimilar. It also rejected as insignificant evidence showing that devices designed to protect against vehicle collisions had been installed at other DMV buildings. According to the court, "The law is that there has to be some specific notice as to dangerous conditions at this specific location." Judgment was accordingly entered in favor of the state.

## DISCUSSION

The essence of the Morfins' complaint was that the Chula Vista DMV facility was designed unreasonably in that it failed to take into account and include precautions against the possibility that an automobile might collide with the building. Among other theories of defense, the state asserted it was immune from liability because its approval of the design for the Chula Vista facility was reasonable and it never became aware of any facts indicating the facility presented an unreasonable risk of injury.

■ Pursuant to Government Code section 830.6, the state has no liability for a defect in the design plan for a public improvement if it can establish the three elements which constitute the design immunity affirmative defense. The state must show: "(1) A causal relationship between the plan and the accident; (2) discretionary approval of the plan prior to construction; [and] (3) substantial evidence supporting the reasonableness of the design." (*Muffett* v. *Royster* (1983) 147 Cal.App.3d 289, 306 [195 Cal.Rptr. 73].) In effect, the trial court applies the deferential "substantial evidence" standard traditionally employed by reviewing courts and uses it to determine whether any reasonable state official could have approved the challenged design. (*Id.* at pp. 306-307; see also *Hefner* v. *County of Sacramento* (1988) 197 Cal.App.3d 1007, 1014-1015 [243 Cal.Rptr. 291].) "The rationale behind design immunity is to prevent a jury from reweighing the same factors considered by the governmental entity which approved the design." (*Bane* v. *State of California* (1989) 208 Cal.App.3d 860, 866 [256 Cal.Rptr. 468].) Of course a design apparently reasonable at the time of approval and construction may later be shown to be unreasonable for a variety of reasons. Under such circumstances, "immunity is lost if the subsequent history shows the design was unreasonable for any reason once the public entity has notice of the dangerous condition and has a sufficient time period to remedy it." (*Id.* at p. 871.) In any event, the existence of design immunity is a question of law

for the court to determine. (*Mozzetti* v. *City of Brisbane* (1977) 67 Cal.App.3d 565, 572 [136 Cal.Rptr. 751].)

In an attempt to obtain evidence which might show the state was on notice of an unusually high risk of building-collision accidents at DMV facilities, the Morfins propounded a series of interrogatories requesting information from the state concerning vehicles which collided with DMV buildings within 10 years preceding the Morfins' accident.[1] The state answered the interrogatories with respect to the Chula Vista building but objected to providing any information concerning any other locations on the grounds that the answers would be burdensome to compile and the information sought was irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. The trial court refused to order the state to respond further, concluding the Morfins were "[o]nly entitled to responses for accidents at that particular location."

█  Here it is clear the evidence sought by the Morfins might itself be admissible or lead to the discovery of other admissible evidence. (See *Valley Bank of Nevada* v. *Superior Court* (1975) 15 Cal.3d 652, 655-656 [125 Cal.Rptr. 553, 542 P.2d 977].) State witnesses testified that the construction of the Chula Vista DMV building was standard for one-story wood frame buildings and the parking lot layout was a standard design used in virtually all DMV's and most other commercial parking lots. They also admitted that the design of the Chula Vista facility did not take into account the possibility of vehicle collisions with the building, nor was the parking lot designed so as to direct traffic flow away from the building. Further, the designers did not think that the users of DMV facilities posed any unusual risks which should be considered before finalizing a design plan.

If the discovery sought by the Morfins revealed an unusually high incidence of vehicle-building collisions at other DMV facilities, it could be argued drivers in DMV parking lots pose a unique risk which must be taken into account in designing such facilities. Perhaps the Morfins could show that the high risk is due to the higher proportion of inexperienced drivers

---

[1] The interrogatories read as follows:

"1. Have any vehicles either collided with, or made any kind of contact with, portions of the Chula Vista Department of Motor Vehicles building, or any other California Department of Motor Vehicles building within ten (10) years of the plaintiffs' accident?

"2. If your answer to Interrogatory No. 1 is in the affirmative, please state the date and a complete description of each incident alleged.

"3. For each incident described in Interrogatory No. 2, do you have possession or control of, or any knowledge as to the existence of, any written statements or recording concerning any and all incidents described in the preceding interrogatories?

"4. If you [*sic*] answer to Interrogatory No. 3 is in the affirmative, please state the present location of each such written statement or recording."

using the DMV lot or the increased anxiety associated with driving tests and other DMV functions.

The trial court believed the Morfins had to show notice to the state of a dangerous condition at the Chula Vista location. (*Ante,* p. 815.) The state suggests that evidence of accidents at other facilities is inadmissible unless the "other facility" is "extremely close" to the one where the accident at issue occurred. (See, e.g., *McCormick* v. *Great Western Power Co.* (1932) 214 Cal. 658 [8 P.2d 145, 81 A.L.R. 678]; *Hicks* v. *Ocean Shore Railroad, Inc.* (1941) 18 Cal.2d 773 [117 P.2d 850].) But distance is only one factor which may cast light on a question of relevance, and the state's position is undercut by evidence showing that the Morfins' accident in Chula Vista prompted the DMV to develop protective barrier options to be used at DMV buildings throughout the state. Indeed, the state's argument is impliedly inconsistent with the Supreme Court's decision in *Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112 [211 Cal.Rptr. 356, 695 P.2d 653, A.L.R.4th 1747], holding that a plaintiff need not establish prior similar incidents in order to prove foreseeability and hence liability on the part of a property owner. Prior similar incidents are merely one means of showing the extent of the risk which should have been foreseen and guarded against. (*Id.* at pp. 125-132.) Here, the significance of vehicle-building collisions at other DMV facilities is not dependent on their being close to Chula Vista. Their relevance would be based on the fact that the state knew or should have known of the unusual risk associated with DMV parking lots.

We, of course, have no way of knowing how many vehicle-building collisions occurred during the relevant 10-year period, if any, or the circumstances of such accidents. As a result, we must presume that the information denied to the Morfins would have been relevant, and the trial court's ruling was therefore prejudicial. It light of our conclusion, it is unnecessary to reach the Morfins' additional contentions.

DISPOSITION

Judgment reversed.

Nares, J., concurred.

**BENKE, J., Dissenting.**—I would affirm the lower court's ruling. While it is true that material sought by discovery need only be "reasonably calculated" to lead to the discovery of admissible evidence (Code Civ. Proc., § 2017, subd. (a)), a judge has the discretion to limit otherwise proper discovery where the burden or expense in production of requested material

clearly outweighs the likelihood that the information sought will lead to the discovery of admissible evidence. (Code Civ. Proc., § 2017, subd. (c).) A protective order may also be granted to restrict the frequency or extent of a discovery method where that method is unduly burdensome taking into account the needs of the case and the importance of the issues in the litigation. (Code Civ. Proc., § 2019, subd. (b).)

Here, the request is for raw statewide data. Both temporally and substantively, it is an exceedingly broad request. Plaintiffs have asked the state to provide the date and a "complete description" of all incidents involving any contact or collision any vehicle has had with any portion of every Department of Motor Vehicles (DMV) building in the state for the 10 years between 1977 and 1987. In addition, for every such contact or collision the DMV is asked to state whether it knows of any written or recorded statement and where such written or recorded statement can be found. Counsel at oral argument indicated there are well over 100 DMV offices throughout the state.

Despite the breadth of the discovery request, the majority concludes the information would be relevant to the design defects in the Chula Vista office because it might show a "high incidence of vehicle-building collisions at other DMV facilities" (maj. opn., *ante*, p. 816) from which it could be argued DMV parking lots pose a "unique risk" which must be taken into account in designing such buildings or that a higher number of inexperienced drivers use the lot and suffer from anxiety due to driver's test and other DMV functions. I have two difficulties with the majority conclusion.

First, the raw statewide data the majority has required the state to produce will not, by itself, support the majority's theory of liability. Rather, in order to use the raw DMV data to establish the hypothesis that all DMV buildings are subject to a "high" incidence of collisions, the Morfins are going to have to compare the DMV data with something: either an accepted engineering standard or data from incidents at non-DMV buildings. Indeed, for all the Morfins know, the DMV may have *fewer* incidents of building collisions than engineers should otherwise expect or other types of buildings experience. Significantly, nowhere in the record—not in support of their motion to compel nor at trial—have the Morfins suggested such an engineering standard or how they would define the class of non-DMV buildings which may be usefully compared to DMV buildings. One can only imagine the collateral disputes over engineering standards and comparable buildings the requested data will spawn on remand.

In addition to ignoring the substantial burdens the Morfins will face in making any use of the information requested, the majority fails to give any

consideration to the cost and difficulty of producing it. (Code Civ. Proc., § 2017, subd. (c).) The Morfins' interrogatories ask for *all* incidents involving *all* contacts with *all* buildings for a period beginning in 1977. In opposing the Morfins' motion, the state submitted a declaration from a DMV official which in part states: "To investigate and compile information regarding any contact by any vehicle with any DMV building during the ten years prior to January 8, 1987, and locating any documents or recordings relating thereto, would at minimum require hundreds of man hours. Present staffing levels for current DMV operations do not readily provide for this task and it would be a hardship for the department." Presumably the trial court relied on this unrebutted statement in denying the Morfins' discovery motion. Quite apart from the current financial difficulties facing the public sector in this state, in light of this record I find unacceptable a disposition on appeal which, without giving any consideration to the burden it is creating, compels little more than a fishing expedition.

In considering the request for information with respect to other DMV facilities, for which there is little assurance in the record relevant evidence can be produced, and information about the Chula Vista facility, the relevance of which is difficult to dispute, the trial court ordered that the state produce information for the entire life of the Chula Vista office. I believe the balance struck by the trial court was appropriate given the issues in this case. In my opinion, it cannot be said the judge abused his discretion. I would affirm the judgment.

Respondent's petition for review by the Supreme Court was denied April 15, 1993. Panelli, J. was of the opinion that the petition should be granted.