[Civ. No. 6942. First Appellate District, Division Two.—October 14, 1929.]

LIM BEN, as Administrator, etc., Respondent, v. PACIFIC GAS AND ELECTRIC COMPANY (a Corporation), Appellant.

Thos. J. Straub, Charles E. Finney, J. C. Wood, Leo H. Susman and John J. McDonald for Appellant.

Snook & Snook & Chase for Respondent.

Henry W. Coil, Newman Jones, H. M. Hammack, Paul Overton and Samuel Poorman, Jr., *Amici Curiae.*

LUCAS, J., *pro tem.*—This action was brought by plaintiff and respondent Lim Ben as the administrator of the estate of Lim Sing Pong, deceased, to recover damages for the death of said decedent, due, it is alleged, to the negligence of the defendant corporation, appellant herein. A jury returned a $15,000 verdict for respondent and from the judgment thereon appeal is taken on the following grounds: (1) that the evidence was insufficient to support the implied finding of the jury that there was actionable negligence on the part of appellant; (2) that decedent was guilty of contributory negligence; and (3) that the court committed error (a) in denying appellant's motion for a nonsuit; (b) in denying appellant's motion for a directed verdict; (c) in denying appellant's motion for a judgment notwithstanding the verdict; (d) in refusing to grant a new trial; (e) in sustaining objections to certain questions asked the witness Worthington; and (f) in the giving of certain instructions.

Decedent, who was twenty-seven years old, married, and the father of one child, was engaged in the laundry business and had an earning capacity of about $150 per month. Just prior to the accident which caused his death he was driving a light Ford laundry delivery car easterly along the southerly side of Mather Street, between Howe Street on the west and Piedmont Avenue on the east, in the city of Oakland. Mather Street is forty-four feet wide from curb to curb, and slopes downward from Howe Street to Piedmont Avenue on a seven per cent grade. The sidewalk on the south side of the street is eighteen feet wide, consisting of a six-foot cement strip in the center, with six feet of dirt on either side of the cement. Situate therein, about midway between Howe Street and Piedmont Avenue, in the dirt portion thereof between the cement strip and the plank curb, stood one of appellant's power line poles. The north-

erly portion thereof at the bottom was approximately one foot south of the said curb and about an equal distance easterly of an open, uncurbed cement driveway leading from the street to a private garage. Suspended on the pole near the top, thirty-six feet four inches above the ground, was a metal transformer thirty-four inches in height and twenty-one inches in diameter, weighing 750 pounds. It was neither bolted nor otherwise fastened to the pole, being maintained in place merely by two ''L'' shaped steel hangers one-half inch in thickness bolted to the transformer ten or twelve inches apart. These hangers were hooked over a four-inch by six-inch cross-arm and extended down ''a little better than 1¼ inches'' on the side of the cross-arm opposite the transformer. The bottom part of the transformer rested against another cross-arm or rest-arm lower down on the pole, so that in place it would maintain an erect position. The cross-arms ran at approximately right angles with the street curb and were attached to the westerly side of the pole.

Decedent's delivery car was proceeding along the southerly side of Mather Street from the west at a rate of between ten and fifteen miles an hour. At no time did its speed increase, but before it reached the pole in question it was seen for some distance to swerve from side to side, one witness testifying that it swerved a couple of feet each way, and another that it swerved half the length of the car. Finally, curving toward the south, the front portion of the car struck the pole at an angle, shoved it over two inches at the surface of the ground, and splintered a one and one-half inch thick hollow wooden moulding which encased a ground wire running down the pole. The Ford was badly damaged. Immediately after the impact the decedent alighted and stood near the pole in the dirt portion of the sidewalk between the paved part and the curb. The transformer was seen to sway back and forth several times in a northerly and southerly direction until it fell, crushing and instantly killing decedent.

The witness Worthington, an electrical engineer in the employ of the appellant, testified that the transformer was hung on the pole in the same manner that is usually and generally employed, not only by appellant, but by other power companies whose lines he had observed, and that he

had never seen or heard of a transformer being bolted to a pole or cross-bar.

It is the contention of appellant in support of its first ground of appeal that the transformer, its hangers and the cross-arms were all in good condition and in proper location, and that since it was shown that the method employed in hanging the transformer to the pole was the usual method followed by appellant and others in appellant's business, it was established as a matter of law that appellant was in the exercise of due care. Reliance in part is placed upon the opinion of Mr. Justice St. Sure in the case of *Webber* v. *Bank of Tracy*, 66 Cal. App. 29, 36, [225 Pac. 41], wherein the court said: ''Negligence is not to be imputed from methods in general use in any business. The standard of ordinary care is established by competent testimony upon the custom and general usages of the business. . . . No man is held by law to a higher degree of care than the fair average of his profession, business or trade, and the standard of due care is the conduct of the average prudent man. . . . However strongly they may be convinced that there is a better, no jury can be permitted to say that the usual way and ordinary way is a negligent way, for which liability shall be imposed.''

It may be conceded that this is a correct statement of a general principle of law, but it is not, in the opinion of this court, controlling herein. While it is true that negligence is not to be imputed from methods in general use in any business, this rule in nowise relieves appellant from its general duty of exercising ordinary care in the construction and maintenance of its power transmission system.

''This means such care as a reasonably careful and prudent person, having in view the dangers to be avoided and the likelihood of injury therefrom, would exercise under the circumstances, in order to prevent injury. Where death may be caused by an agency lawfully in use, ordinary care requires that every means known or that with reasonable inquiry would be known, must be used to prevent it. . . . If the negligent act or omission is one which the company ought, in the exercise of ordinary care, to have expected was likely to result in injury to others, then it is liable for an injury proximately resulting therefrom, although it might not have foreseen the particular injury

which did happen.'' (*Carroll* v. *Central Counties Gas Co.,* 74 Cal. App. 303, at 307 [240 Pac. 53].)

■ Appellant's contention would have more force had the pole in question been located on private property, or away from traffic, or at any point where a reasonably prudent person would have been justified in concluding that no outside agency would disturb it; but we cannot hold as a matter of law that appellant was in the exercise of ordinary care when it hung, by means of one-half inch hangers extending but an inch and a quarter down over a cross-arm, a 750-pound metal weight near the top of a forty-foot pole situate in the sidewalk area of a public street, but one foot from the wooden curbing, and equidistant from an uncurbed driveway leading off said street. Particularly is this true when such street, constructed on a seven per cent grade, is located in a thickly populated city and is generally traveled by automobiles which might, for any one of many reasons and through no fault of the drivers thereof, come in contact with such pole.

That the pole in question was not sufficiently protected from traffic is established by the evidence that at the time the radiator of decedent's car came in contact with it none of the wheels struck or was stopped by the sidewalk curbing. Considering all these facts we are of the opinion that the question of appellant's negligence was not one of law but one of fact for the jury, and the jury having by its verdict impliedly found the evidence sufficient to establish negligence on the part of appellant, this finding will not be disturbed.

■ As to the second point made by appellant, namely, that respondent should not recover because of contributory negligence on the part of the decedent, we are also of the opinion that this question was one of fact for the jury to decide, and that its implied finding against appellant should not be disturbed.

■ Contributory negligence is an affirmative defense and the burden of establishing such defense by a preponderance of the evidence was upon appellant. What actually caused decedent's Ford delivery car to come in contact with appellant's pole will probably never be known—at least it has not been proven. It was not for the jury to enter into the field of speculation or conjecture in order to arrive

at a conclusion as to what probably happened, but it was for appellant to prove by a preponderance of the evidence exactly what did happen. Having failed to prove as a matter of fact what actually happened, it cannot be heard to complain of the jury's finding.

In support of the contention that the proximate cause of decedent's death was his own negligent driving and that the presence of the pole with the transformer hanging to it was but a remote circumstance to be considered, appellant cites the case of *Allen* v. *Atlantic & Pacific Tel. Co.,* 21 Hun (N. Y.), 22, as squarely applicable to the case at bar, stating the rule therein to be: "If the proximate cause of the breaking of a telegraph pole was collision with a runaway team, and the pole was so placed as to be safe from ordinary danger of collision, a person injured by or because of the breaking of the pole, cannot recover against the telegraph company; and this irrespective of the strength or weakness of the pole."

The weakness of this authority as applied to the facts set forth hereinabove is that it presupposes that the pole was so placed as to be safe from ordinary danger of collision. Here the pole with the dangerous instrumentality hanging to it was not so placed.

Most of the cases cited in support of appellant's contention that deceased was guilty of contributory negligence appear to be cases where the acts of the party killed or injured were either clearly negligent or deliberate. For example, in the case of *Hontz* v. *San Pedro etc. R. R. Co.,* 173 Cal. 750 [161 Pac. 971, 973], Mr. Justice Henshaw found it was "equally clear that decedent's negligence, amounting to recklessness, was a direct and contributing cause to his death"; and in the case of *Smith* v. *Associated Oil Co.,* 53 Cal. App. 142 [199 Pac. 879], Mr. Justice Waste laid down the rule that where "as here (the case he was then considering) the facts are undisputed and the dictates of common prudence point to only one reasonable conclusion, the question (of contributory negligence) is then one of law for the court." In the case we are now considering, however, while the dictates of common prudence might point to any one of several reasonable conclusions as to the cause of decedent's Ford coming in contact with the power pole of appellant, the evidence that for some distance before

the impact his car was zigzagging or swerving from side to side, coupled with the presumption of law that "a person takes ordinary care of his own concerns" (sec. 1963, Code Civ. Proc., subd. 4), would seem to point to the more reasonable conclusion that the conduct of decedent was the result of some sudden happening and was neither negligent nor deliberate. In any event, we feel the case comes squarely within the rule that "if reasonable minds might draw different conclusions upon the question of negligence, the question is one of fact for the jury." (*Reinders* v. *Olsen,* 60 Cal. App. 764 [214 Pac. 268, 270].)

If, as here held, the evidence was and is sufficient to support the implied findings of actionable negligence on the part of appellant and freedom of contributory negligence on the part of the decedent, the trial court properly denied appellant's motions for a directed verdict and for a judgment notwithstanding the verdict, and was guilty of no abuse of discretion in refusing to grant the motion for a new trial.

Of the remaining assignments of error, the one directed to the sustaining of objections to questions asked the witness Worthington we feel to be without merit. The questions put to Mr. Worthington were: "Have you ever in your experience in the city of Oakland, with respect to the maintenance of pole transmission, known of a transformer falling from a pole?" and "In your opinion, Mr. Worthington, was the transformer, as installed on the pole in question at the time in question installed in a proper and prudent manner?"

The answer to the first question would obviously have been of no probative value, particularly in the absence of a showing of conditions existing similar to those in the case at bar; and the answer sought to be elicited by the second question, as to the prudence of the installation was one to be given by the jury after hearing all of the facts and circumstances, rather than one to be given by an expert witness. The jury heard from this witness all that it was entitled to hear on the subject of proper installation when, after detailing the method of installation, the witness told them this method was the one usually and generally followed, and that he had never heard of or seen a transformer bolted to a pole or cross-bar.

In reference to alleged erroneous instructions, appellant complains of the following instruction given by the court: "Contributory negligence is such an act or omission on the part of a plaintiff, amounting to a want of ordinary care as, concurring or cooperating with the negligent act of the defendant, was the proximate cause of the injury complained of," on the ground that the article "the" before the words "proximate cause" caused the jury to be advised that contributory negligence to bar recovery must be *the* proximate cause of the injury. We do not so construe the instruction, for the definition expressly refers to want of ordinary care on the part of the plaintiff *concurring or co-operating with the negligent act of the defendant.*

The next instruction complained of was an instruction requested by the respondent, reading as follows: "Where negligence is continuous in its nature, existent at all times up to the moment of the injury, an independent act, to constitute the proximate cause by displacing the original proximate cause must be so disconnected in time and nature as to make it plain that the damage occasioned was in no way a natural or probable consequence of the original wrongful act or omission. The original act of negligence, the primary causation, may be in its nature so continuous that the concurrent wrongful act precipitating the disaster will in law be regarded not as an independent, but as conjoining with the original act to create the disastrous result."

This instruction more properly applies to cases where an independent act of a third party is involved and should not have been given in the instant case. In the light of all of the instructions, however, we feel the error was harmless.

A further instruction assigned as error was the instruction that "The defendant was under obligation to exercise ordinary care in the construction and maintenance of its transformer to prevent its escape from the pole upon which it was suspended," it being urged that this instruction injected a new element into the case, namely, care in the construction of the transformer. We see no merit in this contention. While a more appropriate word than the word "construction" might have been used to describe the attaching of the transformer to the pole upon which it was suspended the words "to prevent its escape from the pole

upon which it was suspended'' show with sufficient clarity that the obligation of the appellant to exercise ordinary care related not to the physical construction of the transformer itself but to the method by which it was attached to the pole. The same instruction contained the additional language: ''Where death may be caused by an agency lawfully in use, ordinary care requires that every means known, or that with reasonable inquiry would be known, must be used to prevent it.''

This is a correct statement of the law, as set forth hereinabove in the quotation from the case of *Carroll* v. *Central Counties Gas Co.*, *supra*, and we believe it to be applicable to the case at bar for the reasons heretofore given.

The final instruction at which criticism is aimed by appellant is the instruction that ''If you find from the evidence that such negligence existed or occurred as charged by the plaintiff's complaint, and that it was the proximate cause of the death of Lim Sing Pong, the plaintiff's intestate, then the plaintiff is entitled to recover such damage as from the evidence and proofs, under all of the circumstances of the case, you may deem to be just.''

This instruction is said to be erroneous because it ignores the pleaded defense of contributory negligence. Appellant cites the case of *Beyerle* v. *Clift*, 59 Cal. App. 7 [209 Pac. 1015], among others, in support of this contention. If this instruction were given to or accepted by the jury as a ''formula'' instruction, and purported to be a complete statement of the law upon which plaintiff below might recover, appellant's position would be correct.

. The reasoning in the opinion of Mr. Chief Justice Waste in the case of *Douglas* v. *Southern Pac. Co.*, 203 Cal. 390 [264 Pac. 237, 238], wherein the case of *Beyerle* v. *Clift*, *supra*, is commented upon and distinguished, is particularly applicable to the case at bar. In the Douglas case the following instruction was complained of: ''It is admitted by defendant in this case that A. J. Beck, E. L. Carr, C. J. Clouth, D. Frazer and Leslie Straight were employees of defendant and were acting within the scope of their employment at the time of the accident. If you should find that the injury to one plaintiff and the death of the other were caused by the negligence of these employees or either of them, while operating defendant's engine and car at

the time of, or immediately prior to the accident, your verdict should be for plaintiffs and against the defendant, since an employer is bound by the acts of his employees while acting within the scope of their employment, and their negligence is, in law, deemed to be the employer's negligence.''

Concerning it the chief justice said: ''We are not prepared to say . . . that said instruction was given to or accepted by the jury as a 'formula' instruction. It does not purport to be a complete statement of the law upon which the plaintiffs might recover, but served merely to inform the jury that responsibility attaches to a principal for the negligent acts of his servant committed within the scope of the latter's employment. The concluding language thereof supports this view, for, following the direction that verdicts be brought in for the plaintiffs if the jury be of the opinion the accident resulted from the negligent operation of the train by defendant's employees, the instruction states 'since an employer is bound by the acts of his employees while acting within the scope of their employment, and their negligence is, in law, deemed to be the employer's negligence.' In our opinion the instruction constitutes nothing more than an expression of the doctrine of *respondeat superior*. This being so, the instruction need not have set forth all of the elements essential to recovery by the plaintiffs. Our examination of the record discloses that these several elements were fully and properly expressed to the jury in the many other instructions given by the lower court.''

Exactly the same situation obtains here. The instruction under consideration headed the instructions given by the court on the subject of damages. Elsewhere in the instructions, both before and after this instruction, the court fully advised the jury as to the rule of contributory negligence, informing them among other things that ''such negligence, if any there was, however slight it may have been, on the part of Lim Sing Pong, which proximately caused or contributed to the collision and fatal injuries to him, would bar plaintiff's right to recover,'' and that ''If decedent was guilty of any negligence which proximately contributed to his injury . . . the decedent's contributory negligence in such case defeats recovery.''

Just as the instruction assigned as error in the Douglas case was properly held to constitute nothing more than an expression of the doctrine of *respondeat superior*, so here the alleged erroneous instruction must be held to constitute nothing more than an expression on the subject of measure of damages.

The judgment appealed from is affirmed.

Sturtevant, J., and Nourse, Acting P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 12, 1929, and a petition by appellant and *amici curiae* to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 9, 1929.

All the Justices concurred.