[Civ. No. 8776. First Appellate District, Division One.—October 30, 1933.]

JAMES J. McCORMICK, Respondent, v. GREAT WESTERN POWER COMPANY OF CALIFORNIA (a Corporation), Appellant.

ROBERT TILLIE, Respondent, v. GREAT WESTERN POWER COMPANY OF CALIFORNIA (a Corporation), Appellant.

Thos. J. Straub, W. H. Spaulding and Clinton F. Stanley for Appellant.

Reisner & Deming for Respondents.

THE COURT.—Plaintiffs in these consolidated actions were awarded damages by a jury for personal injuries suffered by them as a result of coming in contact with defendant's power wires strung along a public street in the city of Oakland. From the judgments entered on the verdicts the power company has appealed.

At a previous trial of the actions, judgments of nonsuit were granted, the trial court holding the evidence legally insufficient to establish against the power company a *prima facie* case of negligence. Plaintiffs appealed and the judgments of nonsuit were reversed (*McCormick* v. *Great Western Power Co.*, 214 Cal. 658 [8 Pac. (2d) 145, 81 A. L. R. 678]), it being held on appeal that the facts proved were sufficient to support the conclusion that the power company was negligent in failing to take care of its wires after having received information from which it might be reasonably suspected that persons engaged in lawful pursuits in places where they had a right to be would come in contact with said wires and be injured thereby, in the condition and location in which said wires were then being maintained.

At the second trial the essential facts established relating to the issue of the power company's negligence were the same as those established at the first trial; and on the pres-

ent appeal said company urges again the same legal contentions that it did on the former appeal in exoneration of its liability for the accident. It is evident, therefore, that the decision on the former appeal determining that the evidence was legally sufficient to support a finding that said power company was negligent, established the law of the case on that issue.

The main facts so established at both trials were in substance as follows: Said company maintained three high-tension wires, each carrying 11,000 volts of electricity, along a public street in Oakland in front of the property on which the accident occurred. The wires were strung on cross-arms attached to the tops of poles set near the curb of the sidewalk adjacent to the property. The cross-arms were fastened approximately 52 feet above the level of the sidewalk. One wire was attached to the cross-arm on the side of the pole nearest the property and the other two were fastened to the same cross-arm on the side of the pole nearest the street. About two months prior to the happening of the accident the division superintendent of the power company gained knowledge of the fact that the owner of the property was erecting thereon a five-story building reinforced with steel; and acting upon such knowledge said superintendent caused the wire nearest the property to be moved over 27 inches on the cross-arm toward the pole, so that, as relocated, said wire was in fact 10 feet 4 inches distant from the wall of the building when said wall reached the level of the wire. Nevertheless, plaintiffs, who were structural ironworkers employed on said building, were severely burned thereby when the end of a steel rod, which they were obliged to project over the wall of the building in order to put it in place, came in contact with the nearest wire, the evidence showing in this respect that when the end of the rod came within 8 or 10 inches of said wire the electricity arcked therefrom and the rod fell across the wire, causing the wire to burn in two, the loose ends swinging across the other two wires, severing them also; and plaintiffs were badly burned before they could be extricated.

Among the legal contentions made by said power company on both appeals, in exculpation of liability for the accident, were that having complied with all franchises,

permits and regulations of the Railroad Commission and with the approved practice of best-managed companies in locating its poles and wires on said public street, it could not be held to have been negligent; that under such franchises and permits it had a superior right to occupy the street and that plaintiffs, in bringing a steel rod in close proximity to or in contact with said wires, were trespassers against the power company, and that consequently it owed plaintiffs no duty. In further support of the former decision on appeal in ruling adversely upon the foregoing contentions, it may be stated that it appears to be well settled that where no contractual relations exist and there is no assumption of risk—such being the situation here—the general practice with respect to the maintenance and operation of power lines will not excuse an alleged negligent act unless such practice is consistent with due care (*Anstead* v. *Pacific Gas & Electric Co.*, 203 Cal. 634 [265 Pac. 487] ; *Lim Ben* v. *Pacific Gas & Electric Co.*, 101 Cal. App. 174 [281 Pac. 634]), and the question of negligence must be determined by the facts of the particular case in which it arises. (*Phoenix Assur. Co.* v. *Texas Holding Co.*, 81 Cal. App. 61 [252 Pac. 1082].) ▉ And with respect to defendant's claim that plaintiffs were trespassers, the record discloses no evidence respecting the ownership of the street; and we must presume, therefore, that the owner of the adjoining land owned to the center thereof. (Civ. Code, sec. 831; *Porter* v. *City of Los Angeles,* 182 Cal. 515 [189 Pac. 105].) Such being the case the owner was entitled to its full beneficial use subject only to the easement of the public and the power company. (*Gurnsey* v. *Northern Cal. Power Co.,* 160 Cal. 699 [117 Pac. 906, 36 L. R. A. (N. S.) 185].)

▉ It is true, as defendant points out, at the former trial a letter was introduced in evidence written by the power company's superintendent to the general contractor of the building in which the accident occurred warning him of the presence of said wires and of the danger of contact therewith, and at the second trial this letter was produced but not offered in evidence. Its absence is of no vital importance, however, because an inspection of its contents shows that, if admitted, the letter could have served but two possible purposes: It might have been considered as a circumstance tending to establish the defense of contributory

negligence, which was not inquired into or determined on that appeal; or, it might have been considered as additional evidence upon the question of the power company's knowledge of the probable danger of contact with its wires; and aside from said letter, as will hereinafter appear, there was ample evidence introduced at the second trial to establish that fact, the superintendent of the power company having in effect so admitted.

■ It is also true that on the first appeal it was held that the trial court erred in excluding certain evidence offered by plaintiffs as to the happening of previous accidents, which they claimed were similar in character to and not too remote in place or point of time from the present one; and that at the second trial plaintiffs failed to establish those facts. The decision on the former appeal did not go to the extent of holding, however, as the power company seems to contend, that such proof was indispensable to the establishment of a *prima facie* case of negligence on the part of the power company; nor was the reversal of the judgments of nonsuit placed on the ground alone of the exclusion of such evidence. As pointed out by the decision therein, the evidence was offered in the nature of additional proof of knowledge on the power company's part that there was danger of persons being injured by the presence of its wires in the condition and location in which they were then being maintained; and as pointed out therein also such evidence was rejected by the trial court upon the ground that there was no necessity for such proof—that the evidence already affirmatively showed knowledge on the part of the company of the dangerous situation of its wires. On the appeal, however, it was held that since the evidence was relevant and material plaintiffs were entitled to the benefit thereof even though it was cumulative; and that consequently its exclusion was error. It cannot be said, therefore, that the absence of such proof at the second trial had the effect of destroying the *prima facie* case of negligence established by the other proof.

The power company contends also, as it did on the first appeal, that the case of *Sweatman* v. *Los Angeles Gas & Electric Corp.*, 101 Cal. App. 318 [281 Pac. 677], is decisive in its favor of the present case; and again we are unable to agree with such contention. An examination of the de-

cision as reported shows that it did not go before and consequently was not passed upon by the Supreme Court. But aside from that fact, an analysis of the decision itself clearly demonstrates that it is not controlling here because it is based on circumstances materially different from those of the present case. In this regard it will be found, first, that the appeal therein was not taken, as here, from a judgment after trial on the merits. It dealt merely with the legal sufficiency of a pleading—the complaint—the trial court having sustained a demurrer thereto without leave to amend. Consequently, the question of the sufficiency of the evidence to establish a *prima facie* case of negligence was not considered or determined. Secondly, so far as the decision discloses, the complaint therein nowhere alleged, nor was it at any time claimed that the power company had any information whatever that a building was being constructed in close proximity to its power wires. The accident happened in Los Angeles, and from what may be gleaned from the decision on appeal the charge of negligence attempted to be stated was based upon the theory that because it was "the usual thing for such building operations to be conducted in Los Angeles in like proximity to similarly charged electric wires in the streets", the power company was charged with constructive notice of the erection of this particular building and consequently with knowledge of the danger of contact with its wires. The trial court held in effect that such constructive notice was not legally sufficient upon which to base a charge of negligence, and its ruling was sustained on appeal, the reviewing court quoting in support of its affirmance, among other cases, that portion of the opinion in *Polloni* v. *Ryland,* 28 Cal. App. 51 [151 Pac. 296, 298], wherein it was said: " 'An injury that is not the natural consequence of negligence and which would not have resulted from it but for the interposition of some new, independent cause *that could not have been anticipated,* is not actionable.' " (Emphasis added.)

In the present case there was the positive, undisputed admission of the superintendent of the power company, who was a witness in the case, that he knew some two months prior to the accident that a five-story reinforced steel concrete building was being constructed on this particular property in close proximity to said wires; that he also knew

"that there were exterior structures and scaffolding, and so on, being placed on or adjacent to the building; . . . that men were handling ropes, scaffolding, and other material on and around the building; . . . that building material would be handled from the street up to the top of the building and around the building in general . . . " and that it was on account of the situation thus created that caused him to move the wire nearest the building over on the cross-arm toward the street for a distance of 27 inches. ■ In other words, as declared in *Minter* v. *San Diego Consol. etc. Gas Co.*, 180 Cal. 723 [182 Pac. 749], and the other cases cited in the decision on the former appeal, the rule by which the responsibility of the power company is to be measured is whether the circumstances present are such as would lead an ordinarily prudent person to suspect that the wires so placed would cause injury. In the Sweatman case there were no such circumstances pleaded or claimed; while in the present case, as shown, ample evidence was adduced to establish such fact. It is apparent, therefore, that the decision in the Sweatman case is in no way decisive of the present one.

■ It is further contended by the power company on the present appeal that in any event the evidence established as a matter of law that plaintiffs were guilty of contributory negligence. This question was urged but not passed upon at the first trial; and was not presented or considered on the former appeal. However, it was tried as an issue of fact at the second trial, and the trial court sustained the jury's negative finding thereon; and we are convinced that the evidence relating thereto is sufficiently conflicting to place the matter beyond the power of the reviewing court to interfere therewith on appeal. Defendant's contention in this regard is based chiefly upon the claim that the wires were visible from the place within the building where plaintiffs were employed. But, as indicated, the evidence is conflicting on this point. It shows that a 30-inch wall extended above the floor on which plaintiffs were working, and although the wires were severed as a result of the accident, there is ample evidence to support the finding that the wires were below the level of the wall and could not be seen until an observer neared the wall. The cross-arm to which the wires were fastened was painted yellow, and the words

"high voltage" were painted thereon, and there is evidence to show that several times in the course of their work that day plaintiffs stepped on a platform which was within and about four feet from the side of the building next to the power line; but the evidence further shows that plaintiffs started to work on the building for the first time on the morning of the accident; and they both testified that they neither observed the power wires when they went on the job, nor saw them while they were working. It is apparent, therefore, that the evidence does not compel the conclusion, as defendant contends, that said wires were in plain view from the platform on which plaintiffs stepped while performing their work.

The judgments are affirmed.

Cashin, J., dissented.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 29, 1933, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 28, 1933.