[Sac. No. 5444.   In Bank.—Aug. 29, 1941.]

IRELAN–YUBA GOLD QUARTZ MINING COMPANY (a Corporation) et al., Plaintiffs and Appellants, v. PACIFIC GAS & ELECTRIC COMPANY (a Corporation) et al., Defendant and Appellant; THE SOCORRO MINES, INCORPORATED (a Corporation), Respondent.

558

Wm. M. Maxfield, A. J. Just and Joseph F. Aleck, Jr., for Plaintiffs and Appellants.

Thos. J. Straub, W. H. Spaulding and John J. Briare for Defendant and Appellant.

White & Harber, Clinton E. Harber and Lynne Kelly for Respondent.

CARTER, J.—Plaintiffs recovered judgment entered on the verdict of a jury for damages against defendant, Pacific Gas & Electric Company for the loss suffered by them as the result of the destruction of their property by fire alleged to

have been caused by the negligence of defendants. The jury returned a verdict against defendant and appellant, Pacific Gas & Electric Company, in favor of each plaintiff aggregating slightly in excess of the sum of $20,000. No verdict was returned in respect to defendant, The Socorro Mines, Incorporated, also known as O'Brien Mines, Inc., and plaintiffs' motion for a retrial or new trial as to that defendant was denied; plaintiffs appeal from that order of denial. Defendant, Pacific Gas & Electric Company, hereinafter referred to as appellant, appeals from the judgment entered on the verdict against it. The action was dismissed as to all other defendants except the Croesus Gold Mining Company, a nonsuit having been granted as to the latter. Plaintiffs in their complaint charged defendants with so negligently operating and maintaining a power line that the electric energy escaped therefrom and kindled a fire which spread to and destroyed real and personal property belonging to plaintiffs.

The rural area of Sierra County at the scene of the fire in question is mountainous and timbered. Appellant owns a power substation at the town of Alleghany, known as the Alleghany substation, from which it distributes electric power to various consumers. One power distribution line known as the "Alleghany-Spanish Mine Line," owned by appellant, extends from the substation to the Spanish Mine. From a point on that line about three-quarters of a mile from the Plumbago Mine, and near the property of plaintiff, Irelan-Yuba Gold Quartz Mining Company, a power line known as the "Plumbago Line" extends to the Plumbago Mine. The fire started on the right of way of the last-mentioned line.

The Plumbago Mine and the Plumbago Power Line are owned by the Croesus Gold Mining Company. The Plumbago Line was constructed by Yuba-Sierra Development Company, a lessee of the Plumbago Mine about the year 1933, and was used for a time by it to transmit electricity to said mine. Thereafter the Yuba-Sierra Development Company abandoned its lease. In 1935, defendant, O'Brien Mines, Inc., came into possession of the Plumbago Mine by an assigned lease which covered the mining claims "together with the improvements, equipment and appurtenances," and were operating the mine at the time of the fire. Appellant was selling electricity to O'Brien Mines, Inc., the same being delivered over the Alleghany-Spanish Mine Line and the Plumbago

Line. The right of way of the latter line where the fire occurred had been cleared to a width of ten to eleven feet on each side of the center line when first constructed, but at the time the fire occurred was covered with brush, grass and undergrowth. There were trees within ten feet of the pole line, the branches of which in many instances extended to and over the wires. The fire started in leaves and grass on the ground on the right of way and quickly reached the brush near by. Appellant had never inspected the line or right of way except immediately after it was constructed at which time it found that it did not meet its standards of construction. The three wires of the line were strung on poles, there being fuses at the Alleghany-Spanish Mine Line end and a transformer and meter at the Plumbago Mine.

At about 11 o'clock on the morning of October 16, 1936, during a wind which was of considerable velocity, but not unusual for that time of year in that neighborhood according to plaintiffs' evidence, a pine tree between fifty and sixty feet in height broke off at about twenty-five to thirty feet from the ground and fell across the transmission wires on the Plumbago Line, breaking two of them, but one end of the tree remained suspended by the third wire. The wires being charged with electricity, the result was that sparks therefrom ignited the grass, leaves and brush on the right of way and the fire thereby kindled, spread over an area of 2,200 acres, destroying in its path, buildings, timber, and personal property owned by plaintiffs. The wires on the Plumbago Line carried 6,900 volts, which was reduced to 2,300 volts by the transformer at the Plumbago Mine. The tree which fell was a live growing tree located about twenty-four feet from the wires of the Plumbago Line. The point of commencement of the fire on the Plumbago Line right of way was on United States government land in the national forest about eight hundred feet from the Plumbago Mine toward the junction of the Alleghany-Spanish Mine Line and the Plumbago Line. The Plumbago Line traverses national forest lands by virtue of a permit from the United States Forest Service. Appellant's substation was equipped with a circuit breaker designed to break automatically the flow of electricity into the Alleghany-Spanish Mine Line whenever there was a short circuit on the line.

Plaintiffs present in support of the judgment several theories of appellant's negligence causing the fire including either the failure of the circuit breaker or fuses to function, or the manual closing of the circuit too soon and without investigation after the breaker operated. Also that appellant, allegedly being under a duty so to maintain the Plumbago Line that electricity could not escape therefrom, was negligent in permitting brush and inflammable material to accumulate and remain on the right of way and in permitting trees to stand in such close proximity to the power line that a falling tree would contact the wires. Appellant's main contention is that the evidence is not sufficient to support the judgment on any theory and that it was under no obligation to inspect or maintain the Plumbago Line. In view of the conclusion which we have reached, we will concern ourselves only with the last above-mentioned theory of negligence.

Appellant denies that it is under any duty with respect to the maintenance and inspection of the Plumbago Line, asserting that a person supplying gas or electricity is not responsible for the condition of the conductors or right of way when he does not own or control them. (*Roberts* v. *Pacific Gas & Electric Co.*, 102 Cal. App. 422 [283 Pac. 353] ; *Ray* v. *Pacific Gas & Electric Co.*, 3 Cal. App. (2d) 329 [39 Pac. (2d) 812].) As we have seen, the Croesus Gold Mining Company is the owner of the Plumbago Line and O'Brien Mines, Inc., is the lessee of the Plumbago Mine, and its appurtenances. Nevertheless, it appears that on December 1, 1935, appellant entered into an agreement to sell to The Socorro Mines, Incorporated (the predecessors of the O'Brien Mines, Inc.), electric power with a motive force of 2,300 volts. It was under that agreement that appellant was supplying the electricity which escaped and caused the fire. The significant portions of that agreement are as follows: Appellant promises to ''sell *and deliver to the* Consumer, (The Socorro Mines Incorporated) and the Consumer hereby promises to purchase from the Power Company, (appellant) . . . all of the electric energy which shall be required for the operation of the Consumer's electric machinery and apparatus, and in the conduct of the Consumer's business *upon the Consumer's premises* situate near Alleghany, Sierra Co. . . . All electric energy . . . shall be . . . *delivered* and metered at an electro-motive force of . . . 2300 volts. . . . Consumer hereby grants Power Com-

pany a right of way over the shortest practicable route for any pole lines which it may be necessary to build over Consumer's premises for the purpose of making delivery hereunder. . . . *Such energy shall be delivered by the Power Company to the Consumer from the Power Company's Transformers at a convenient place to be designated by the Consumer, subject, however, to the approval of the Power Company. . . .*" (Italics ours.)

Pursuant to that agreement appellant installed its transformer and meter at the Plumbago Mine, the premises of the consumer, O'Brien Mines, Inc., and at a point on the Plumbago Line beyond where the fire commenced. Under the circumstances here presented we believe the reasonable inference is that the appellant was using the Plumbago Line for its purposes and had at least joint right of control thereof with O'Brien Mines, Inc. The agreement calls for the delivery of the power from the transformer at a place designated by the consumer. Up to the time that the current reached and passed through the transformer, appellant was engaged in delivering the electricity and for that purpose was using and controlling the Plumbago Line with the implied consent of O'Brien Mines, Inc.

While Rule 9 of the Railroad Commission, which it is conceded is made a part of the agreement between the appellant and O'Brien Mines, Inc., provides that "The company does not assume the duty of inspecting the consumer's lines, appliances, or apparatus, or any part thereof, and assumes no liability therefor," this provision of the agreement would not exempt the appellant from liability for injuries sustained by third persons through the negligent maintenance of said line.

If, as we have seen, the appellant by its contract has adopted the line as its means of delivering the power to the consumer, then to that extent the line is not the consumer's or not under his entire control; it is at least under the joint control of both the seller and consumer of the electric energy. Appellant points out that under a contract with another consumer, Tightner, the loss on the latter's tap line is borne by him, and that under the above rule of the Railroad Commission there would be forbidden discrimination between Tightner and the consumer here involved. There is no discrimination merely because power is delivered to one person at the

beginning of his private line and to another over and at the end of the consumer's line and at the consumer's premises.

Reference is made to the case of *Roberts* v. *Pacific Gas & Electric Company, supra.* There the city of Chico owned the power line and right of way and the action was by a third party against the defendant, Pacific Gas & Electric Company, for injuries suffered from negligence in the maintenance thereof. However, the contract between defendant and the city reserved to defendant the right to transmit power over the line to one of its independent customers. The court held that the defendant power company had such joint control as to impose upon it a duty of care in the inspection and maintenance of the line. In the case at bar the use by appellant of the Plumbago Line to deliver a certain amount of power to Plumbago Mine at the transformer coupled with its ownership and control of the transformer at the mine shows that it had control of the line. By its ownership and control of the transformer and meter it was controlling the flow of the electricity and all facilities therefor between the transformer and its substation. (*Roberts* v. *Pacific Gas & Electric Co., supra.*) For the above reasons it is manifest that this is not a case like *Ray* v. *Pacific Gas & Electric Co.,* 3 Cal. App. (2d) 329 [39 Pac. (2d) 812], and *Hill* v. *Pacific Gas & Electric Co.,* 22 Cal. App. 788 [136 Pac. 492], where the appliances causing the injury were entirely owned and controlled by the plaintiff and were beyond the point of delivery by the one supplying the commodity. We must conclude therefore that appellant owed a duty of care with respect to the inspection and maintenance of the Plumbago Line and right of way where the fire occurred.

The duty of care imposed upon one supplying electricity over a pole line under its control is stated in *McCormick* v. *Great Western Power Co.,* 214 Cal. 658, 663 [8 Pac. (2d) 145, 81 A. L. R. 678] as follows:

" 'The standard to be attained is that of ordinary and reasonable care, and this means such care as a reasonably careful and prudent person, having in view the dangers to be avoided and the likelihood of injury therefrom, would exercise, under the circumstances, in order to prevent injury. . . . ' 'If,' therefore, says the court in *Minter* v. *San Diego Consol. Gas etc. Co.,* 180 Cal. 723 [182 Pac. 749, 750], 'guided by those

considerations which ordinarily regulate the conduct of human affairs, an ordinarily prudent person would have had reasonable ground to suspect that the wires so placed would cause injury, the plaintiff can be said to have proved a breach of duty.' And where the evidence is such that reasonable men might fairly differ as to the answer to the above question, the issue is one of fact for the jury to determine, and if it finds in favor of the plaintiff, its verdict will not be disturbed." Appellant never did inspect the Plumbago Line. The falling wire ignited dry grass permitted to exist upon the right of way, which in turn quickly kindled brush permitted to accumulate and remain under the wires. Although the tree which was broken by the wind was about twenty-four feet from the center line of the right of way, which had been cleared about eleven feet each side of the pole line, and was a live and growing tree, there rested against it at the point where it broke, about twenty-two feet from the ground, a limb of another tree. The effect of the rubbing of that limb against the tree which fell probably could not be observed, but the existence of the contact surely could have been seen by a reasonable inspection. It is not unreasonable to require appellant to anticipate that with high winds usually blowing in the vicinity in which the fire occurred, the tree might fall across and break one of the wires. Under the circumstances here presented, appellant was bound to anticipate the existence of a wind even of high velocity where such winds were not unusual. (*Rocca* v. *Tuolumne County Elec. etc. Co.*, 76 Cal. App. 569 [245 Pac. 468].) It should anticipate that once a wire did break the probabilities would indicate that a short circuit would result in igniting the combustible material such as grass and brush which it permitted to accumulate and remain on the right of way. It is common knowledge that once a fire commences in a forest it may well consume thousands of acres of forest and everything else in its path before it can be brought under control. It is not decisive that the tree was not within the limits of the portion of the right of way which had been cleared. The permits from the United States' Forest Service authorizing the construction of the line across government land did not specify the width of the right of way. The Forest Supervisor who had to do with the giving of permits testified that trees could be cut down or trimmed whenever necessary for the proper maintenance

of the power line even though such trees might be beyond the point of the original clearing for the right of way. It has been held that even though a tree near a power line running along a street is upon private property, the owner of the line may be guilty of negligence when a limb from the tree falls on the wires. (*Rocca* v. *Tuolumne County Elec. etc. Co., supra.*) If a tree is in such close proximity to a pole line that wind may cause it to fall across the wires, the failure to provide against such eventuality is negligence; or as said in *Smith* v. *San Joaquin etc. Power Corp.*, 59 Cal. App. 647, 649 [211 Pac. 843]:

"The defendant pleaded in its answer, and thereafter offered to prove, facts showing or tending to show that the wire which the plaintiff touched was properly in place the night before, that a wind arose, and the leaves of a large palm were blown over against the wire and broke it, and that such facts constituted an act of God. If the facts stated constituted an act of God the defendant should have been permitted to show the same as a defense. However, the respondent contends that the alleged facts do not show an act of God within the proper meaning of that rule. (*Fay* v. *Pacific Improvement Co.*, 93 Cal. 253 [27 Am. St. Rep. 198, 16 L. R. A. 188, 26 Pac. 1099, 28 Pac. 943].) In this behalf he contends that if the palm tree stood in such a position as to endanger the defendant's wire that the defendant should have properly protected its wire therefrom and, in failing to do so, the omission was an act of neglect on the part of the defendant, and not an act of God. This contention is supported by the authorities. (*Chidester* v. *Consolidated Ditch Co.*, 59 Cal. 197.)" In the case of *Sullivan* v. *Mountain States Power Co.*, 139 Ore. 282 [9 Pac. (2d) 1038, 1044], a growing sixty foot tree was located about twenty-five to thirty feet from the defendant's power line traversing timbered country. A high wind blew it across the wires with the result that a fire was kindled which destroyed plaintiff's property. Liability was imposed on the defendant, and in so doing the court stated the degree of care to be as follows:

"The required degree of care is always graduated according to the danger attendant upon the activity one is pursuing. The standard does not vary—it is the conduct of an ordinarily prudent person. But such an individual exercises care commensurate with the dangers to be avoided and the likelihood

of injury to others. Such being true, it may be well to take note of the harmful quality of electricity. Electricity is a dangerous force whose destructive qualities are greatly facilitated by its subtle, invisible, and mysterious nature. Since the plant where it is generated is often many miles distant from the place of consumption, the transmission lines frequently pass over country roads, city streets, through forests, and other places where danger to life or property lurks if the electrical current escapes from the conduit. The length of the transmission wires renders impossible the character of supervision generally bestowed upon other dangerous substances." And again at page 1046:

"Accordingly, we conclude that the defendant, in the performance of its duty to maintain its right of way safe for the transmission of electricity, was bound to exercise a degree of care commensurate with the highly dangerous commodity which it was conveying over its wires. This duty remained unperformed so long as it permitted trees to grow in such close proximity to its uninsulated wires that it, in the exercise of the judgment of a reasonably prudent person, should have known that the tree and the wires would come into contact in a manner that would endanger the safety of others or their property."

Appellant points to evidence that the right of way was cleared and maintained the same as was customarily done with other power lines traversing national forest lands. Conformity by defendant to general custom of power companies with relation to the manner of maintaining power lines and rights of way does not excuse defendant unless the practice is consistent with due care. (*Anstead* v. *Pacific Gas & Electric Co.*, 203 Cal. 634 [265 Pac. 487]; *McCormick* v. *Great Western Power Co.*, 134 Cal. App. 705 [26 Pac. (2d) 322]; *Lim Ben* v. *Pacific Gas & Electric Co.*, 101 Cal. App. 174 [281 Pac. 634].)

Under the circumstances this court cannot therefore set aside the implied finding of negligence by the jury and determine as a matter of law that permitting a tree to stand in such close proximity to the power line and allowing grass and brush to accumulate on the right of way as was shown to exist in this case, did not constitute negligence.

Appellant complains of the giving and the refusal to give certain instructions to the jury. Appellant's offered but refused instruction was to the effect that if the jury

found that the appellant "neither owned nor controlled the Plumbago Tap Line"—then appellant was under no duty to inspect or maintain that line and its failure to do so is not negligence. The court instructed the jury in respect to the control of the Plumbago Line as follows:

"If you find from the evidence that the fire in question was set ablaze by an ember from a tree which the defendants, or any specific defendant, had been authorized either to trim or cut down and the fire was caused by contact between the tree's branches and the uninsulated wires of said defendant, or over which said defendants, *or any of them, were transmitting electrical current,* and that said defendant, or defendants, knew of said condition, or might have known had it or they exercised ordinary diligence, of the existence of said tree in proximity to said electric wire, then their failure, or the failure of any of them, *to keep the right of way used* by the power line cleared of such tree or trees, or of anything which might make the presence of said power line a hazard in a forest area, constituted negligence on the part of said defendants, or any of said defendants so doing." (Italics ours.) We do not believe that the appellant was prejudiced. Its offered instruction was not strictly accurate in that it did not definitely include the element of liability being predicated upon joint right of control with the lessee of the Plumbago Mine. The instruction given with respect to control, while possibly not wholly accurate, would not necessarily mislead the jury. It may be construed to mean that the "transmission" of electricity over and "use" of the Plumbago Line right of way, included the element of joint control of the line by appellant, or the adoption of the line by it for its use in delivering electricity to O'Brien Mines, Inc. In any event, as we have seen, the evidence does show that appellant did have at least joint right of control of the Plumbago Line by reason of the inference flowing from the circumstances.

Appellant also objects to an instruction advising the jury that the rules and regulations of the Railroad Commission admitted in evidence apply to electric energy only after its delivery to the consumer and that they are to be considered only if the delivery took place between appellant's substation and the point of origin of the fire. That instruction is in accordance with the views herein expressed, the particular rule involved, stating that appellant is not responsible for

the maintenance or condition of the consumer's facilities, is heretofore discussed. There were not two deliveries as claimed by appellant, the only delivery was from the transformer at the Plumbago Mine.

Finally appellant asserts that error was committed in the refusal of the court to admit expert testimony as to why the transformer was placed at the Plumbago Mine. It is very doubtful that such inquiry is properly within the field of opinion evidence. The answer that presumably would be forthcoming would be only the conclusion of the witness that the position of the transformer had nothing to do with the *point* of delivery of electricity by appellant. That issue was one for the jury, and concerning a subject on which the jury did not need expert assistance. If the purpose was to elicit evidence on the function of a transformer, appellant was not prejudiced by the ruling because other evidence was introduced to show that the electro-motive force of 6,900 volts was reduced by means of the transformer to a net delivery of 2,300 volts after the energy passed through the transformer.

In view of the foregoing conclusions it is unnecessary to discuss the evidence relating to the other claims of negligence upon which plaintiffs relied.

At the close of the trial the jury returned a verdict for all of the plaintiffs but against the appellant, Pacific Gas & Electric Company, only. No verdict was returned as to defendant O'Brien Mines, Inc. Four forms of verdict were submitted to the jury. One, a verdict for all defendants, one for plaintiffs and against defendants Pacific Gas & Electric Company and O'Brien Mines, Inc., one for plaintiffs and against defendant O'Brien Mines, Inc., and one for plaintiffs and against defendant Pacific Gas & Electric Company. The jury used and returned its verdict upon the last-mentioned form only. The jury were instructed that if their verdict was for plaintiffs it is not necessary that it be against all of the defendants, but if it was found that *only one of the defendants* was negligent then the verdict should be *"only against said defendant"*; and further that several forms of verdict were handed to the jury *"one* of which you will cause to be signed by your foreman." Plaintiffs moved for a new trial or retrial in the alternative as to defendant O'Brien Mines, Inc. The trial court denied plaintiffs' motion, and they have appealed from such order of denial. We think it is

clear that no appeal lies from such an order, but inasmuch as the record before us discloses what took place in the trial court with respect to the action of the jury, we will review the same for the guidance of the trial court in connection with any further proceedings which may be taken in this case.

█ It is well settled that a verdict against one of two defendants but which is silent as to the other defendant is not a verdict in favor of the latter but is merely a failure on the part of the jury to find upon all of the issues. (*Fennessey* v. *Pacific Gas & Elec. Co.*, 10 Cal. (2d) 538 [76 Pac. (2d) 104] ; *Benson* v. *Southern Pacific Co.*, 177 Cal. 777 [171 Pac. 948] ; *Rankin* v. *Central Pacific Railroad Co.*, 73 Cal. 93 [15 Pac. 57] ; *Benjamin* v. *Stewart*, 61 Cal. 605.) This rule is subject to the qualification that a verdict may be construed with reference to the instructions pursuant to which it was rendered. (*Fennessey* v. *Pacific Gas & Elec. Co., supra; Snodgrass* v. *Hand,* 220 Cal. 446 [31 Pac. (2d) 198] ; *Crain* v. *Sumida,* 59 Cal. App. 590 [211 Pac. 479].) █ But we do not believe that the instructions here given with reference to the verdict may necessarily be construed as to indicate a verdict in favor of defendant, O'Brien Mines, Inc. It is equally probable that they merely omitted to make any determination as to that defendant. As stated in the case of *Keller* v. *Smith,* 130 Cal. App. 128, 132 [19 Pac. (2d) 541], in passing upon a similar situation:

"The rule of construction suggested in the case of *Crain* v. *Sumida, supra,* could not be exactly applied here, since nowhere did the jury in this case express any finding in favor of the petitioners. To hold that they so found requires an inference that they intended to do something they have not expressly done. Even though the court instructed the jury that it might find against one and·at the same time in favor of the other defendants, while such an instruction strengthens the inference suggested, it is by no means conclusive in the absence of some expression showing the intention of the jury. There is a wide difference between drawing the only possible conclusion, where there is an expressed finding against one defendant and another in favor of the only other defendant although the name of the other is not inserted, and drawing an inference, probable through it may be, as to the intention of a jury in regard to a matter that has been entirely omitted from its verdict. It is just as possible to draw the inference that the jury in this case read and rejected the proposed ver-

dict next following the one it caused to be signed as that it read and considered those preceding it. In this particular case an inference or presumption could be drawn either way. While it may be true that the greater probability lies with the view that this jury intended to find in favor of these petitioners, if the question of the intention of the jury could be left to inference or presumption, the established rule seems to be that the intention of the jury must not be left to inference or presumption, that it must be expressly declared, and that where it is not expressly declared in reference to any one of several defendants who have separately answered, it must be taken that the jury has failed to pass upon that particular issue.'' In the case of *Fennessey* v. *Pacific Gas & Electric Co., supra,* the court questioned the jury after their verdict against only one defendant was returned, and they specifically stated that they were not bringing in a verdict against the defendants not mentioned in the verdict returned. ▮ Nor can it be said that the plaintiffs are estopped to object to the failure to find against defendant O'Brien Mines, Inc., because they waived the objection by not requesting the court to instruct the jury to retire and make its finding with respect to that defendant pursuant to section 619 of the Code of Civil Procedure. The doctrine of waiver under the circumstances here involved means merely that if no objection is made to the verdict when it is returned, that objection is waived insofar as it may have been effectual as an attack on the verdict returned. If all the issues are not determined by the verdict, but no objection is made thereto, then the verdict stands as to the issues included therein, but as to the remaining issues the matter is set at large and further proceedings should be had in the trial court to adjudicate those issues. (*Portman* v. *Keegan,* 31 Cal. App. (2d) 30 [87 Pac. (2d) 400].)

In view of what we have said, it is obvious that plaintiffs are entitled to have the issues in this case retried as to defendant O'Brien Mines, Inc., also known as The Socorro Mines, Incorporated.

The judgment against the appellant, Pacific Gas & Electric Company, is affirmed. The appeal from the order denying plaintiffs' motion for a retrial as to defendant, O'Brien Mines, Inc., is dismissed.

Shenk, J., Curtis, J., Traynor, J., and Spence, J., *pro tem.,* concurred.

EDMONDS, J., Dissenting.—A power company which transmits electric energy over wires or appliances which it does not control is under no obligation to inspect them and is not liable for injuries sustained by reason of their defective condition. (*Roberts* v. *Pacific Gas & Electric Co.*, 102 Cal. App. 422 [283 Pac. 353].) It is conceded that the appellant Pacific Gas & Electric Company did not own the line upon which the short circuit occurred; therefore the question of controlling importance is whether the utility had such control of this line as to make it liable for the damages caused by the fire.

Under the contract of the power company with the consumer and the testimony concerning the facilities employed in delivering the electrical energy, this question was one of fact for the jury. However, the evidence, as I read it, would support a verdict either for or against the power company, and under such circumstances, the failure to give the jury an instruction clearly stating that the power company is not liable for the damage occasioned by the fire if it did not have some control of the line to the mine constitutes reversible error. (*Scarborough* v. *Urgo*, 191 Cal. 341 [216 Pac. 584]; *Berkovitz* v. *American River Gravel Co.*, 191 Cal. 195 [215 Pac. 675].) Certainly the instruction quoted in the opinion of my associates as justifying the refusal to give the instruction concerning control does not clearly state the rule of law upon which the power company relies. The fact that the appellant utility was transmitting electrical current over the Plumbago Mine Line does not compel the conclusion that it had any control of the line; the rule stated in the refused instruction applies to those situations in which a power company is transmitting electrical energy over a line which it does not control.

For these reasons, in my opinion, the judgment should be reversed.

Appellant's petition for a rehearing was denied September 25, 1941. Edmonds, J., voted for a rehearing.