Gerald CARTER

v.

BANGOR HYDRO–ELECTRIC
CO., et al.

Supreme Judicial Court of Maine.

Argued Sept. 20, 1991.
Decided Oct. 29, 1991.

Eric Cote (orally), Cote, Guillory & Linderman, Saco, for plaintiff.

Gerald F. Petruccelli (orally), Mary Mitchell Friedman, Petruccelli & Martin, Portland, David C. King, Rudman & Winchell, Bangor, for defendants.

Before ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

ROBERTS, Justice.

Plaintiff Gerald Carter appeals from a summary judgment in favor of defendant Bangor Hydro–Electric Company entered in the Superior Court (York County, *Fritzsche, J.*) on his complaint alleging negligence in the distribution of electricity. First, Carter argues that Bangor Hydro did not file its motion for summary judgment in a timely fashion. Second, he argues that a question of fact exists whether Bangor Hydro exerted sufficient control over a power line privately owned by the Carters to create a duty to inspect the line. Finally, he contends that Public Utilities Commission regulations independently impose a duty to inspect privately owned lines. Because none of these contentions have merit, we affirm.

## I.

The record reflects, and there is no dispute about, the following: in 1975, seven-year-old Gerald Carter was injured when he touched a power line running from Route 198 on Mount Desert Isle, approximately 500 feet across a neighbor's property, to the Carter home. The line was built in 1941, with Bangor Hydro installing the first 150 feet of line and Porter Grindle, the Carters' predecessor in title, installing the remaining 350 feet. Bangor Hydro subsequently installed a transformer on Grindle's portion of the line, at Grindle's request. When the line was installed, Bangor Hydro informed Grindle that he was responsible for inspecting and maintaining the 350 feet of line he owned. Since then, except for two occasions when Bangor Hydro removed fallen tree branches from the line at the owners' request, Bangor Hydro has never inspected either the transformer or any portion of the line. When Grindle sold the property to the Carters in 1974, however, he neglected to inform them that they owned the 350 feet of power line and

were responsible for its maintenance. The accident occurred on a part of the line installed by Grindle and then owned by the Carters.

Carter filed a negligence claim against Bangor Hydro in 1989, and the court placed the action on the expedited trial list, setting the discovery deadline for April 30, 1990. Almost six and a half months after that deadline, in November 1990, Bangor Hydro filed its motion for summary judgment. Carter objected to the motion, arguing that the motion was untimely and should be denied. By order dated January 31, 1991, the court granted both the motion for leave to file the motion, and the motion for summary judgment itself. The court denied Carter's motion for reconsideration, finding no duty imposed on Bangor Hydro via 65–407 C.M.R. 32, § 2.05 of the Public Utilities Commission's rules.[1] Final judgment was entered in Bangor Hydro's favor on March 15, 1991, and Carter filed this timely appeal.

## II.

■ When an action is placed on the expedited trial list, the court must specify the date by which discovery shall be completed. M.R.Civ.P. 16(c)(1). After that date, a party may not file a motion with the court "except by leave of [the] court." M.R.Civ.P. 16(c)(2). The rule was designed

> to allow the court, in its discretion, to entertain motions, *such as those to dismiss for summary judgment,* which are filed after the expiration of the date for completion of discovery.... The purpose of the amendment is to allow the court to hear such motion when it believes that such a course will advance the final disposition of the action.

M.R.Civ.P. 16(c)(2) advisory committee's note to 1989 amend., Me.Rptr., 551–562 A.2d XXXV (emphasis added). Thus, the granting of Bangor Hydro's motion for leave to file a motion for summary judgment is reviewed for abuse of discretion.

---

**1.** *Section 2.05 states:* "Each utility shall make every reasonable effort to properly warn and protect its customers, and the public, from harm because of its plant or service."

Carter argues that Rule 16(c)(2) should be read as providing a limited discretion to the trial court, allowing it to grant a motion only in circumstances where a party seeks time to obtain deposition transcripts after the completion of discovery. Such an argument is unduly restrictive of the trial court's discretion. M.R.Civ.P. 56 states, in part, that a motion for summary judgment must be filed "within such time as not to delay the trial." Carter concedes that the granting of the motion in this case did not have the practical effect of delaying the trial in violation of Rule 56. When the court heard the motion for leave to file a motion for summary judgment in January 1991, there was no reasonable prospect that the matter would be scheduled for trial prior to March 1991. In these circumstances the trial court did not abuse its discretion in granting Bangor Hydro's motion for leave to file a motion for summary judgment.

### III.

■ On an appeal from a grant of summary judgment, we review the evidence in the light most favorable to the party against whom judgment has been granted and review the court's conclusion for errors of law. *St. Louis v. Hartley's Oldsmobile–GMC, Inc.*, 570 A.2d 1213, 1215 (Me.1990). We accord that party the full benefit of all favorable inferences that may be drawn from the evidence. *Forbes v. Osteopathic Hosp. of Maine, Inc.*, 552 A.2d 16, 17 (Me.1988). We examine the record to determine independently whether it supports a conclusion that there is no genuine issue as to any material fact, and that the successful party is entitled to a judgment as a matter of law. *Id.*

■ It is well settled that a utility has no duty to inspect or maintain power lines unless it owns or controls them or has actual knowledge of a dangerous condition. *See Windsor Hotel Co. v. Central Maine Power Co.*, 250 A.2d 194, 196–97 (Me.1969) (power company has duty to refrain from sending power over defective wires it does not own if it has actual knowledge of the defect, but the company has no duty to

independently ascertain whether the wires are actually defective). *See also* Annotation, *Liability of Electric Light or Power Company for Injury or Damage Due to Condition of Service Lines or Electrical Appliance Maintained by One to Whom it Furnishes Electric Current*, 134 A.L.R. 507 (1941). Carter does not controvert the fact that Bangor Hydro did not own the line by which Carter was injured. Nor does Carter allege that Bangor Hydro had actual knowledge of the dangerous condition of the Carter's line. Rather, notwithstanding the fact that public utilities have no common law duty in these circumstances, Carter argues that granting summary judgment was erroneous because a question remains whether Bangor Hydro exerted sufficient control to impose a duty to inspect and maintain. We disagree.

■ Ordinarily, the question of whether a utility controls a power line presents a factual question for the jury. *See* 26 Am. Jur.2d *Electricity, Gas, and Steam* § 191 (1966). Merely supplying electricity over a power line and making repairs when the owner so requests, however, does not, without more, raise a factual question whether a power company has exerted sufficient control. *See Kroger v. Omaha Pub. Power Dist.*, 523 F.2d 161, 163 (8th Cir.1975). *See also Oesterreich v. Claas*, 237 Wis. 343, 295 N.W. 766, 769 (1941). There is no evidence in the record to support a finding that Bangor Hydro controlled the line in any fashion.

Bangor Hydro's installation of the electrical transformer does not change our conclusion. In some circumstances, installation of a transformer may support a factual finding of control if the utility reserves to itself some right to utilize the power line for its own purposes. *See Irelan–Yuba Gold Quartz Mining Co. v. Pacific Gas & Electric Co.*, 18 Cal.2d 557, 116 P.2d 611 (1941); *Roberts v. Pacific Gas & Electric Co.*, 102 Cal.App. 422, 283 P. 353 (1929). In this case, however, Bangor Hydro installed the transformer at Grindle's request and for his benefit. Absent any reservation of right to use the line for its own purposes, the mere installation of a trans-

former does not support the conclusion that a utility is exercising sufficient control to warrant imposition of a duty to inspect or maintain the power line. Moreover, ownership of the first 150 feet of line and the transformer will not support an inference that Bangor Hydro had actual knowledge of the dangerous condition. There is nothing in the record to demonstrate that Bangor Hydro was aware of the condition of the Carters' power line.

In the circumstances of this case we also reject Carter's argument that section 2.05 imposes a duty on Bangor Hydro to inspect lines it does not own. The standard of care required of an electric utility is "such care as an ordinarily reasonable and prudent person would have exercised under like circumstances." *Fitts v. Central Maine Power Co.*, 562 A.2d 690, 692 (Me. 1989). Although violation of a company or state regulation may be evidence of negligence, we agree with the court that section 2.05 imposes no additional duty on Bangor Hydro.

Finally, the record is clear that Bangor Hydro met its duty to inform Grindle of his ownership of and responsibilities for the line. The fact that Bangor Hydro removed broken branches from the non-owned line upon request is insufficient to demonstrate that the utility assumed responsibility for inspecting or maintaining the line. Nothing in the record suggests that Bangor Hydro was or should have been aware that Grindle failed to carry out his responsibility to inform the Carters of their ownership and responsibilities.

The entry is:

Judgment affirmed.

All concurring.